## COMMONWEALTH vs. REGINALD BUTLER.

Suffolk. December 3, 2012. - March 26, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Constitutional Law,* Speedy trial, Delay in commencement of prosecution, Assistance of counsel. *Practice, Criminal,* Speedy trial, Delay in commencement of prosecution, Assistance of counsel.

Discussion of the standard of review of a criminal defendant's claim of ineffective assistance of counsel. [709]

This court concluded that a criminal defendant's right to a speedy trial attaches, at least under art. 11 of the Massachusetts Declaration of Rights, when a criminal complaint issues [709-713]; further, this court concluded that the speedy trial clock "resumes" when the Commonwealth reinstates charges following dismissal, such that the time between an initial, formal charge (or other triggering event such as an arrest) and dismissal counts against the government for speedy trial purposes after charges are reinstated [713-714].

The delay from the time of the attachment of a criminal defendant's constitutional right to a speedy trial in September, 1991, to the time of his trial in May, 2003, excluding a period during which the charges against him were dismissed, did not establish that his speedy trial right was violated, where viewed in totality, although the ten-year delay weighed heavily against the Commonwealth, the Commonwealth's negligence as a reason for the delay weighed only lightly against the Commonwealth; the defendant's acquiescence in the delay in bringing him to trial weighed slightly against him and extenuated the presumptive prejudice; and the Commonwealth's rebuttal of the presumption of prejudice counted against the defendant, given that all elements essential for a fair trial were available and any impairment of the defense was speculative at best; accordingly, the decision of his counsel on his direct appeal not to advance a constitutional speedy trial argument did not constitute ineffective assistance. [714-720]

INDICTMENT found and returned in the Superior Court Department on March 23, 1999.

A motion for a new trial, filed on June 26, 2008, was heard by *Margaret R. Hinkle,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael J. Fellows* for the defendant.

*Joseph M. Ditkoff*, Assistant District Attorney, for the Commonwealth.

SPINA, J. This case presents the central questions for purposes of a defendant's right to a speedy trial under the Sixth Amendment to the United States Constitution or art. 11 of the Massachusetts Declaration of Rights: (1) when the speedy trial clock starts, and (2) whether the speedy trial clock "resumes" or "resets" when, after the right to a speedy trial attached, the Commonwealth dismisses charges and then reinstates the charges at a later date. We conclude, pursuant to art. 11 of the Massachusetts Declaration of Rights, that (1) the speedy trial clock starts when a Massachusetts criminal complaint issues, and (2) the speedy trial clock "resumes" when the Commonwealth reinstates charges following dismissal.

After the Appeals Court concluded that the delay in bringing the defendant to trial did not violate Mass. R. Crim. P. 36, 378 Mass. 909 (1979), and affirmed the defendant's rape conviction, see *Commonwealth* v. *Butler*, 68 Mass. App. Ct. 658, 661, 667 (2007) (*Butler I*), the defendant filed a motion for a new trial alleging that appellate counsel[1] was ineffective for failing to argue to the Appeals Court that the defendant's motion to dismiss on speedy trial grounds should have been allowed under the speedy trial provisions of the State or Federal Constitution.[2] See *id.* at 659, n. 2. The motion for a new trial was denied, and the Appeals Court affirmed.[3] See *Commonwealth* v. *Butler*, 79 Mass. App. Ct. 751, 759 (2011) (*Butler II*). We granted the defendant's application for further appellate review. Like the Appeals Court, we conclude that the defendant was not denied

---

[1]The defendant has been represented by different counsel at various stages of his proceeding. He challenges the conduct only of the attorney who represented him on the direct appeal that resulted in the decision in *Commonwealth* v. *Butler*, 68 Mass. App. Ct. 658, 659 n.2 (2007) (*Butler I*).

[2]Trial counsel asserted violation of the defendant's constitutional speedy trial right in a pretrial motion to dismiss.

[3]The defendant does not challenge determinations that his claims of delay under Mass. R. Crim. P. 36, 378 Mass. 909 (1979), and of preindictment delay pursuant to the due process clause of the Fifth Amendment and art. 12, are meritless. See *Commonwealth* v. *Butler*, 79 Mass. App. Ct. 751, 758 (2011) (*Butler II*), quoting *Commonwealth* v. *Dixon*, 458 Mass. 446, 458 (2010). Therefore, our focus in this appeal is solely on the defendant's constitutional right to a speedy trial.

the effective assistance of counsel. Therefore, we affirm the order denying the motion for a new trial.

1. *Facts.* We summarize the relevant facts as found by the motion judge, supplemented by uncontested facts set forth in *Butler I, supra* at 659-661.

On September 16, 1991, a criminal complaint and an arrest warrant issued from the Chelsea Division of the District Court Department against the defendant for rape in violation of G. L. c. 265, § 22 (*b*), and unarmed burglary in violation of G. L. c. 266, § 15, both alleged to have occurred three days earlier. On May 21, 1992, a warrant for the defendant's arrest for these crimes was lodged at the correctional institution where the defendant was serving a sentence on unrelated charges. It appears from the docket that court personnel in the District Court failed to enter details concerning the warrant in the warrant management system as required by G. L. c. 276, § 23A. In January, 1993, while still incarcerated on the unrelated charges, the defendant signed a form requesting a speedy trial on the 1991 complaint. Although the District Court received the defendant's request, the form was not docketed and no action was taken on the request. A department of correction "summary/key issues" report dated April 14, 1993, stated that rape and burglary charges against the defendant were outstanding; however, subsequent "summary/key issues" reports issued between 1994 and 1997, which the defendant signed, stated that the defendant had "no outstanding legal issues."

The defendant completed his sentence on the unrelated charges and was released on June 21, 1997. Three days later, a second warrant for his arrest issued on the rape and burglary charges. The defendant was arrested and arraigned in District Court on the 1991 complaint on March 11, 1998. On April 10, 1998, however, the charges against him were dismissed without prejudice because the Commonwealth was unable to locate the rape victim.

The Commonwealth subsequently renewed contact with the victim and, on March 23, 1999, nearly one year following the dismissal of the charges, obtained aggravated rape and unarmed burglary indictments against the defendant. The defendant was arraigned in Superior Court on May 6, 1999. The defendant's trial began on May 5, 2003, where the issue was not whether

intercourse occurred (the fact of intercourse was established by deoxyribonucleic acid [DNA] evidence and conceded by the defendant), but whether, as the defendant claimed, the victim consented to sexual intercourse in exchange for drugs. A jury convicted the defendant of the lesser included offense of rape, and acquitted him of unarmed burglary.

2. *Standard of review.* Counsel's performance is ineffective if it falls "measurably below that which might be expected from an ordinary fallible lawyer," and "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974) (*Saferian*). "A strategic or tactical decision by counsel will not be considered ineffective assistance unless the decision was 'manifestly unreasonable' when made."[4] *Commonwealth v. Roderiques*, 462 Mass. 415, 425-426 (2012), quoting *Commonwealth v. Watson*, 455 Mass. 246, 256 (2009). To determine whether either prong of the *Saferian* test is implicated here, we consider the merits of the defendant's claim that the delay in bringing him to trial violated his constitutional right to a speedy trial.

3. *Speedy trial analysis.*[5] a. *Threshold inquiry: "presumptive prejudice."* "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial

---

[4] The appellate attorney whose conduct the defendant challenges filed an affidavit in support of the defendant's motion for a new trial. In the affidavit, he explained that he read the cases of *United States v. Loud Hawk*, 474 U.S. 302 (1986) (*Loud Hawk*); *United States v. MacDonald*, 456 U.S. 1 (1972) (*MacDonald*); and *Burton v. Commonwealth*, 432 Mass. 1008 (2000) (*Burton*), to mean that, when a formal charge is dismissed and later reinstated, time prior to dismissal is not counted for purposes of evaluating a speedy trial claim. Proceeding on that assumption, the attorney reasoned that the speedy trial clock in this case started anew on March 23, 1999, the date of the defendant's indictments. The attorney then asserted that he did not believe that he could make a good faith argument that the time from the March 23, 1999, indictment to the commencement of trial on May 6, 2003, was sufficient to raise a constitutional speedy trial claim. For that reason, he only presented what he believed to be the defendant's strongest argument, that the Commonwealth's delay in bringing the defendant to trial violated Mass. R. Crim. P. 36 (b) or (c).

[5] Although we ultimately decide this case pursuant to art. 11 of the Massachusetts Declaration of Rights, we cite Federal cases that interpret the Sixth Amendment to the United States Constitution because the analysis is analogous. See *Commonwealth v. Look*, 379 Mass. 893, 897-898, cert. denied 449 U.S. 827 (1980).

has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett* v. *United States*, 505 U.S. 647, 651-652 (1992) (*Doggett*), citing *Barker* v. *Wingo*, 407 U.S. 514, 530-531 (1972) (*Barker*). Once a defendant has established presumptive prejudice, courts apply the four-factor *Barker* test to evaluate whether the defendant's constitutional right to a speedy trial has, in fact, been violated. *Doggett, supra.* Further analysis of a speedy trial claim under *Barker* is necessary because "presumptive prejudice cannot alone carry a [speedy trial] claim," but is instead "part of the mix of relevant facts." *Doggett, supra* at 655-656.

Although the considerable delay leaves no doubt that a *Barker* inquiry is warranted, we take this opportunity to consider the precise length of delay in the present case. Thus, we address (1) when the defendant's speedy trial right attached, and (2) whether the time prior to the April, 1998, dismissal counts against the Commonwealth, to bring clarity to ambiguous points of law.

i. *Attachment.* It is well-established that indictment or arrest starts the speedy trial clock. See *United States* v. *Marion*, 404 U.S. 307, 320 (1971) ("it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage[s]" right to speedy trial). What is less clear is whether a criminal complaint, a different type of accusatory pleading than that cited by the Supreme Court, similarly triggers a defendant's speedy trial right. See *Rashad* v. *Walsh*, 300 F.3d 27, 35-36 (1st Cir. 2002), cert. denied 537 U.S. 1236 (2003). See generally Mass. R. Crim. P. 3 (g) (1), as appearing in 442 Mass. 1502 (2004) (complaint process). This ambiguity stems from the "interchangeable use of the terms 'indictment' and 'filing of charges.' " *Rashad* v. *Walsh, supra* at 36, quoting *United States* v. *MacDonald*, 456 U.S. 1, 6-7 (1972) (*MacDonald*). See *Doggett, supra* at 655 ("arrest, indictment, *or other official accusation*" triggers right to speedy trial [emphasis supplied]); *United States* v. *Marion, supra* at 321 ("Invocation of the speedy trial provision thus need not await indictment, information or *other formal charge*" [emphasis supplied]). Given this ambiguity, courts have reached different

conclusions[6] concerning whether a criminal complaint constitutes a "formal charge" for the purposes of the attachment of a defendant's right to a speedy trial.[7] Therefore, it is not surprising that some of our appellate decisions have stated that a criminal complaint triggers the right to a speedy trial. Compare *Commonwealth* v. *Malone*, 65 Mass. App. Ct. 285, 288 (2005); *Commonwealth* v. *Willis*, 21 Mass. App. Ct. 963, 964 (1986), and cases cited; and *Commonwealth* v. *Conant*, 12 Mass. App. Ct. 287, 289 (1981), and cases cited, with *Commonwealth* v. *Look*, 379 Mass. 893, 898, cert. denied 449 U.S. 827 (1980), citing *United States* v. *Marion*, *supra* at 320-321 (right to speedy trial attaches at indictment), and *Commonwealth* v. *Gove*, 366 Mass. 351, 353-354, 361 (1974) (same). Indeed, here, the motion judge stated that "the issuance of a District Court complaint is

[6]Compare, e.g., *United States* v. *Boskic*, 545 F.3d 69, 83 (1st Cir. 2008), cert. denied, 555 U.S. 1175 (2009) (complaint does not constitute official accusation triggering Sixth Amendment right to speedy trial), and cases cited; *Pharm* v. *Hatcher*, 984 F.2d 783, 785-786 (7th Cir.), cert. denied, 510 U.S. 841 (1993), and cases cited (same); and *Serna* v. *Superior Court of Los Angeles County*, 40 Cal. 3d 239, 257 (1985), cert. denied, 475 U.S. 1096 (1986) (felony complaint, unlike misdemeanor complaint, did not start speedy trial clock), with *Jacobson* v. *Winter*, 91 Idaho 11, 14 (1966) (same, as to speedy trial guarantee under State constitution), and *State* v. *Lemay*, 155 Wis. 2d 202, 209-210 (1990) (complaint triggers right to speedy trial under Sixth Amendment). Compare also, e.g., W.R. LaFave, J.H. Israel, N.G. King, & O.S. Kerr, Criminal Procedure § 18.1(c) (3d ed. 2013), quoting *People* v. *Martinez*, 22 Cal. 4th 750, 763-764, cert. denied, 531 U.S. 880 (2000) ("A charging document short of an indictment, such as a complaint, will suffice *if* it alone gives 'the court jurisdiction to proceed to trial' "), with Annot., Delay Between Filing of Complaint or Other Charge and Arrest of Accused as Violation of Right to Speedy Trial, 85 A.L.R. 980, 981 (1962) (complaint triggers right to speedy trial), and Note, The Right to a Speedy Trial, 20 Stan. L. Rev. 476, 482 (1967-1968) ("[T]he right to a speedy trial attaches as soon as the government initiates a prosecution against an individual. This prosecution need not be initiated by indictment or information. The right may attach if a complaint has been sworn out or if the individual has been arrested").

[7]Nothing we say here should be interpreted as having any bearing on a defendant's constitutional right to counsel. See *United States* v. *Boskic*, *supra* at 84 n.16 (noting that, because of the different interests at stake, the "Supreme Court has explicitly rejected that link between the Sixth Amendment's right to counsel and the right it provides to a speedy trial"). See also K.B. Smith, Criminal Practice and Procedure § 19.8 (3d ed. Supp. 2012), citing *Commonwealth* v. *Beland*, 436 Mass. 273, 285-286 (2002) (right to counsel does not arise upon issuance of complaint). See generally H.J. Alperin & R.F. Chase, Summary of Basic Law § 7.80 (4th ed. Supp. 2012), and cases cited.

ordinarily sufficient to trigger the defendant's right to a speedy trial."

We conclude that a defendant's right to a speedy trial, at least under art. 11, attaches when a criminal complaint issues. Therefore, arrest, indictment, or a criminal complaint issued pursuant to Massachusetts law, whichever comes first, will start the speedy trial clock. Any cases to the contrary are no longer good law. See, e.g., *Commonwealth* v. *Gove*, *supra*. The constitutional right to a speedy trial attaches because the subject of a criminal complaint is undoubtedly an "accused," and is not merely in "the preaccusation period when a police investigation is ongoing." *Commonwealth* v. *Gove*, *supra* at 357, citing *Commonwealth* v. *Jones*, 360 Mass. 498 (1971). A criminal complaint is a formal charging document in Massachusetts. See Mass. R. Crim. P. 3 (a).[8] The fact that a complaint may be followed by an indictment, see Mass. R. Crim. P. 3 (b), does not render a complaint any less of a formal accusation. Moreover, art. 11 does not distinguish between the types of cases (misdemeanor or felony; within the jurisdiction of the District or Superior Court) to which the right to a speedy trial attaches; it states that the right to a speedy trial applies to "[e]very subject of the [C]ommonwealth." See *Jacobson* v. *Winter*, 91 Idaho 11, 14 (1966) (same, as to Idaho constitution). Of perhaps greatest significance, the subject of a criminal complaint typically faces the same "anxiety, concern, economic debilitation, public scorn and restraint on liberty" that the right to a speedy trial is intended to guard against.[9] *Commonwealth* v. *Gove*, *supra* at 360. See

[8]A formal, criminal complaint issued by a trial court should not be confused with an application for a criminal complaint, which may be filed by any person (including police officers and civilians) with knowledge of facts that constitute a chargeable offense. See Mass. R. Crim. P. 3 (a), (g) (1). A Massachusetts trial court will only issue a criminal complaint where there are sufficient facts to establish that a crime has been committed. See Mass. R. Crim. P. 3 (g) (2) (complaint to issue on probable cause). See also G. L. c. 218, § 35; Dist./Mun. Cts. R. Crim. P. 2 (b).

[9]Starting the speedy trial clock when a trial court issues a criminal complaint furthers the purposes of the right to a speedy trial, even where the defendant is already incarcerated on unrelated charges. See *Smith* v. *Hooey*, 393 U.S. 374, 377-380 (1969). See also *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 522, 526 n.3 (1975).

*Commonwealth* v. *Look, supra* at 903. For these reasons, "no logical conclusion can be reached other than that the time within which an accused is to be secured in his right to a speedy trial must be computed from the time the complaint is filed against him." *Jacobson* v. *Winter, supra.* Therefore, the clock on the defendant's art. 11 right to a speedy trial began running on September 16, 1991, the date on which the District Court issued the criminal complaint charging him with rape and unarmed burglary. See *Commonwealth* v. *Willis, supra.*

ii. *Resume versus reset.* The question whether the speedy trial clock "resumes or resets" arises in the context of formal charges that are brought, dismissed, and brought again. The issue is whether the time between an initial charge and dismissal ("resume," or "tolling" theory), or only the time following a reinstated, formal charge ("reset" theory), should count against the Commonwealth for purposes of a defendant's constitutional right to a speedy trial.[10] We conclude that, as a general rule, the speedy trial clock "resumes" once a defendant is indicted following the dismissal of formal charges such that time between an initial, formal charge (or other triggering event such as an arrest) and dismissal counts against the government for speedy trial purposes after charges are reinstated.[11] We reach this conclusion because the Supreme Court in *MacDonald* did not hold that the period *prior* to dismissal does not count against the government for purposes of determining whether a defendant's right to a speedy trial has been violated. Rather, the Court held that the *interim* period between dismissal of formal charges and subsequent reindictment or arrest on charges arising out of the same incident does not count against the speedy trial clock. *MacDonald, supra* at 7 n.7 (holding is consistent with Speedy Trial Act of 1974, 18 U.S.C. §§ 3161[d], 3161[h][6] [2006 &

[10]It is settled that dismissal of pending charges by the government, acting in good faith, "stops" the speedy trial clock. See, e.g., *MacDonald, supra* at 7; *Burton, supra* at 1008-1009. Thus, all parties to the present action agree that the nearly one year between the dismissal of the charges against the defendant (on April 10, 1998) and the defendant's subsequent indictment on the same charges arising out of the same conduct (on March 23, 1999) does not count against the Commonwealth.

[11]Our conclusion applies to reassertion of formal charges following dismissal of initial, formal charges that arise out of the same conduct, whether or not the charges are exactly the same.

Supp. III 2009], which provides "that if charges are initially dismissed and later reinstated, the period *between* the dismissal and the reinstatement is not to be included in computing the time within which trial must commence" [emphasis added]). See *United States* v. *Loud Hawk*, 474 U.S. 302, 310-312 (1986), and cases cited (*Loud Hawk*). Like *MacDonald*, our decision in *Burton* v. *Commonwealth*, 432 Mass., 1008, 1008-1009 (2000) (*Burton*), did not address the "resume versus reset" issue, but instead merely stated the uncontroverted position that the speedy trial clock stops when the Commonwealth dismisses charges in good faith.[12] Notwithstanding *MacDonald*'s "good faith" quali-fier, we think the "resume" theory expresses the better view because, "[w]ere it otherwise, the government would be able to nullify a defendant's speedy trial right by the simple expedient of dismissing and reindicting whenever speedy trial time was running out on its prosecution." *United States* v. *Colombo*, 852 F.2d 19, 23-24 (1st Cir. 1988). See *United States* v. *Fuesting*, 845 F.2d 664, 668 (7th Cir. 1988) (dismissal of charges tolls speedy trial right). Cf. *United States* v. *Koller*, 956 F.2d 1408, 1412-1413 (7th Cir. 1992); *United States* v. *Wallace*, 848 F.2d 1464, 1469 (9th Cir. 1988).

For these reasons, we conclude that the period of more than six and one-half years between the issuance of the criminal complaint and the dismissal of charges (September 16, 1991, to April 10, 1998), and the period of more than four years between the indictment and trial (March 23, 1999, to May 5, 2003) count against the government for the purposes of the defend-ant's constitutional right to a speedy trial. A total delay of over ten years is undoubtedly "presumptively prejudicial." See *Dog-gett, supra* at 652 n.1.

b. *Analysis under* Barker. We turn to the test set forth in

---

[12]We read *MacDonald, Loud Hawk,* and *Burton* differently from the judge who denied the defendant's motion for a new trial. She "interpreted *Mac-Donald* and *Loud Hawk* to mean that once charges are dismissed in good faith, the relevant period of time for [speedy trial] purposes begins to run with the filing of a subsequent indictment and does not include the time during which the first charge was pending," and then determined that this court "implicitly adopted" the "reset" theory in *Burton, supra* at 1009. The Ap-peals Court in *Butler II, supra* at 756, 759, similarly subscribed to the reset theory, and affirmed the order denying the defendant's motion for a new trial.

*Barker* to determine whether the defendant's right to a speedy trial has been violated. This test balances (i) the length of the delay, (ii) the reasons for delay, (iii) the defendant's assertions of his speedy trial right, and (iv) the prejudice to the defendant (in light of *Doggett*). See *Commonwealth* v. *Look*, 379 Mass. 893, 897-898 (1980), citing *Barker, supra* at 530-533. We consider each factor in turn.

i. *Length of the delay.* Length of delay "is actually a double enquiry." *Doggett, supra* at 651. It first bears on whether a speedy trial analysis is triggered, and is again considered to "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the [speedy trial] claim." *Id.* at 651-652. We need not tarry here, as a ten-year delay, as the Commonwealth concedes, clearly weighs heavily against the Commonwealth.

ii. *Reasons for delay.* The Commonwealth has said that its own negligence caused seven and one-half years of delay.[13] In so stating, the Commonwealth implicitly recognizes that it is not only prosecutorial delay that may count against the Commonwealth for purposes of a defendant's right to a speedy trial. See *Barker, supra* at 531. "The Commonwealth, in the performance of its public trust . . . [has] some 'duty to coordinate the efforts of its various criminal divisions.' " *Commonwealth* v. *Willis*, 21 Mass. App. Ct. 963, 964-965 (1986), quoting *Brady* v. *Maryland*, 291 Md. 261, 267 (1981). See G. L. c. 276, § 23A (warrant management system). Therefore, the Commonwealth cannot elude accountability for the delay in this case even though the prosecution was not responsible for the issuance of the complaint or the lodging of the warrant against the defendant while he was incarcerated. Moreover, we count against the Commonwealth the fact of the District Court's receipt of the defendant's request for a speedy trial but failure to docket it.

---

[13]In its additional opposition to the defendant's pretrial motion to dismiss for lack of speedy trial, the Commonwealth stated that it was negligent in failing to arraign the defendant at a reasonable time after his arrest in November, 1991, on the unrelated charges. Thus, the Commonwealth conceded delay attributable to its own negligence beginning on January 1, 1992. In considering the Commonwealth's concession on negligence, the Appeals Court in *Butler I, supra* at 663-664, said that it was "not convinced that the circumstances before [it] warrant[ed] that concession."

Nevertheless, the second prong of the *Barker* test weighs only lightly against the Commonwealth. Although "our toleration of . . . negligence varies inversely with its protractedness, . . . negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense." *Doggett, supra* at 657. There is no evidence of intentional delay or bad faith on the part of the Commonwealth on these facts. Moreover, although we do not focus merely on the conduct of the prosecution, we do accord greater weight to delay attributable to the prosecution than to other public actors (whether law enforcement or the courts). See *Barker, supra* at 531 (although court congestion factors against government, it weighs less heavily than prosecution's conduct). Therefore, the first period of six and one-half years (from criminal complaint to dismissal) weighs less heavily against the Commonwealth than the second period of four years (from indictment to trial). Moreover, in the latter period in which the prosecution was involved in the defendant's case, most of the delays were either at the defendant's request or by agreement of the defendant's counsel. *Butler I, supra* at 664-665 (attributing only 310 days of delay to prosecution).

iii. *Defendant's assertions of his right to a speedy trial.* It is undisputed that the defendant signed a form requesting a speedy trial on the present charges in January, 1993, while he was incarcerated on unrelated charges. Although we do not, in the defendant's words, "insist[] that a defendant must storm the [c]ourthouse and batter down the doors to preserve his right to a speedy trial," we do require more than the defendant's soft assertion of his right to a speedy trial. We agree with the Appeals Court in *Butler I, supra* at 664, "that the defendant must bear some of the responsibility because he failed to make any inquiry regarding the status of his request for a speedy trial."[14] See

---

[14]Although the Appeals Court in *Butler I, supra* at 663-667, analyzed the defendant's speedy trial claim pursuant to Mass. R. Crim. P. 36 (c), the analyses under the common-law rule and under the Federal and State Constitutions are sufficiently similar that the Appeals Court's reasoning is instructive here. To establish a rule 36 (c) violation requires a showing of unreasonable delay on the part of the prosecution resulting in prejudice to the defendant. The Appeals Court in *Butler I, supra*, determined that the defendant failed to establish a rule 36 (c) violation because he bore some responsibility for failure to inquire into the status of his speedy trial request and because he failed to show prejudice.

*Commonwealth* v. *Lauria*, 411 Mass. 63, 67-69 (1991) (defendant acquiesced in delay in failing to inquire about status of Mass. R. Crim. P. 36 motion). Granted, the department of correction "summary/key issues" reports issued since 1994 stated that the defendant had "no outstanding legal issues." However, the fact that prior department of correction "summary/key issues" reports (for example, a report dated April 14, 1993) stated that rape and burglary charges against the defendant were outstanding suggests that the defendant was aware at least of the possibility of pending charges, and that he intended to take advantage of the government's silence or error to "fly under the radar" to avoid prosecution. See *Commonwealth* v. *Look, supra* at 900 (late assertion of right to speedy trial indicates that defendant was "gambling" that Commonwealth forgot about him). The defendant's acquiescence in the delay in bringing him to trial, thus, weighs slightly against him and, moreover, extenuates the presumptive prejudice. See *Doggett, supra* at 658.

iv. *Prejudice to the defendant.* Although the right to a speedy trial is "not primarily intended to prevent prejudice to the defense caused by passage of time," *MacDonald, supra* at 8, there remains a concern that unreasonable delay between formal accusation and trial carries the "possibility that the defense will be impaired . . . [which] skews the fairness of the entire system."[15] *Barker, supra* at 532. Thus, although the defendant is not entirely absolved of responsibility to present some particularized prejudice at this stage of the analysis, he is entitled to some degree of presumptive prejudice that the Commonwealth can rebut with evidence that any delay left the defendant's "ability to defend himself unimpaired." *Doggett, supra* at 658 n.4. Moreover, the

---

[15]Justice Thomas, dissenting in *Doggett* v. *United States*, 505 U.S. 647, 662 (1992), observed that there are "two conflicting lines of authority, the one declaring that 'limit[ing] the possibility that the defense will be impaired' is an independent and fundamental objective of the Speedy Trial Clause, e.g., *Barker, supra* at 532, and the other declaring that it is not, e.g., [*United States* v.] *Marion*, 404 U.S. 307 (1971)." "The touchstone of the speedy trial right . . . is the substantial deprivation of liberty that typically accompanies an 'accusation.' " *Id.* at 663. See *MacDonald, supra* at 8; *Commonwealth* v. *Gove*, 366 Mass. 351, 359-360 (1974), quoting *United States* v. *Marion, supra* at 320. Therefore, we consider impairment both to the defendant's defense and to his liberty.

passage of time is a double-edged sword. While at once affecting the defense, delay in bringing a case to trial may also make it more difficult, sometimes impossible, for the prosecution to carry its burden of proof beyond a reasonable doubt. See *Loud Hawk, supra* at 315.

Here, the defendant makes only general claims that his ability to defend himself was impaired based on some missing evidence, the unavailability of unspecified witnesses, and the dimming of several witnesses' memories. The Commonwealth has conceded that the loss of cushions from the couch where intercourse occurred, photographs of the door the defendant allegedly kicked in, and the written pages of the rape kit used by the hospital where the victim received treatment following the incident with the defendant have been lost due its negligence.

Where the defendant conceded intercourse (and his admission is corroborated by DNA evidence), the loss of these items (with the possible exception of the photographs) can hardly be seen as prejudicial. Moreover, the Commonwealth has established that "nothing in the record before us . . . suggests that the delay in bringing the defendant to trial precluded him from advancing his best defense." *Butler I, supra* at 667. The percipient witnesses to the rape (the defendant and the victim) were available and testified at trial; the potential significance to the defense of the testimony of the unspecified witnesses is unknown. See *Commonwealth* v. *Look, supra* at 901. Similarly, it is unclear how the loss of the couch cushions impaired the defense, and the acquittal on the burglary charge and conviction of the lesser included offense of rape (as opposed to aggravated rape) suggests that the loss of the photographs of the door actually inured to the defendant's benefit. That the victim was unable to remember some details of the rape was offset by her ability to recall several statements the defendant made during intercourse that went to the crucial issue of consent. See *Loud Hawk, supra*; *Commonwealth* v. *Gove*, 366 Mass. 351, 364 (1974) (no significant failure of memory on crucial issues). What is more, whether intercourse is consensual is not a subject typically vulnerable to memory loss. Because all elements essential for a fair trial were available and any impairment to the defense is speculative at best, we conclude that the Com-

monwealth effectively rebutted the presumption of prejudice and that the prejudice factor counts against the defendant. See *Commonwealth* v. *Gove, supra* at 365; *Commonwealth* v. *Willis*, 21 Mass. App. Ct. 963, 965-966 (1986), and cases cited.

Moreover, there is nothing in the record to suggest that the defendant suffered a substantial deprivation of liberty on account of the issuance of the criminal complaint, particularly in the first period of six and one-half years, much of which he spent incarcerated on other charges. The record indicates that the defendant was not incarcerated on the 1991 complaint at any point during the delay prior to his trial, and was only subject to bail for one month (March 11, 1998, to April 10, 1998). Moreover, although the lodging of a warrant on a criminal complaint for a person incarcerated at a prison or correctional facility *may* result in decreased freedom even within the confines of the prison or correctional facility, there is nothing to suggest that such was the case here. See, e.g., *Smith* v. *Hooey*, 393 U.S. 374, 378-379 (1969); Yackle, Taking Stock of Detainer Statutes, 8 Loy. L.A. L. Rev. 88, 91-92 (1975). To the contrary, the defendant's acquiescence in the delay (in failing to strongly assert his speedy trial right and in assenting to post-indictment delay) suggests that he did not experience the disruption of life often associated with pending criminal charges. See *Doggett, supra* at 663 (Thomas, J., dissenting). See also *MacDonald, supra* at 8, 11; *Commonwealth* v. *Gove, supra* at 360, 365. For these additional reasons, we ascertain no prejudice to the defendant.

4. *Conclusion.* In sum, although the delay from the attachment of the right to a speedy trial in September, 1991, to his trial in May, 2003 (excluding the period during which charges were dismissed), was lengthy, the *Barker* factors, applied in their totality, do not establish that the defendant's constitutional right to a speedy trial was violated. Therefore, because the decision not to advance a losing argument does not fall "measurably below that which might be expected from an ordinary fallible lawyer," and because the defendant was not "deprived of an otherwise available, substantial ground of defence" by virtue of his counsel's decision not to advance a constitutional speedy trial argument on direct appeal, we conclude that the defendant

was not denied the effective assistance of counsel.[16] *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Therefore, the order denying his motion for a new trial is affirmed.

*So ordered.*

---

[16]In fact, winnowing out weak arguments in favor of strong arguments is a virtue of appellate advocacy. See *Commonwealth* v. *Sowell*, 34 Mass. App. Ct. 229, 233 (1993), citing *Smith* v. *Murray*, 477 U.S. 527, 536 (1986). Moreover, that counsel on the defendant's direct appeal obtained review pursuant to Mass. R. Crim. P. 36 (c), several elements of which parallel the constitutional speedy trial analysis, further indicates that he was not ineffective in making the strategic decision to forgo the constitutional claim.