COMMONWEALTH *vs.* NICKOYAN WALLACE
(and a companion case[1]).

Nos. 12-P-1798 & 12-P-1557.

Suffolk. November 13, 2013. - March 21, 2014.

Present: KANTROWITZ, GRAHAM, & MEADE, JJ.

Further appellate review granted, 469 Mass. 1101 (2014).

*Constitutional Law,* Speedy trial, Delay in commencement of prosecution. *Practice, Criminal,* Speedy trial, Delay in commencement of prosecution, Capital case. *Due Process of Law,* Delay in commencement of prosecution. *Homicide.*

A Superior court judge, in ruling on motions to dismiss the murder indictments against the defendant and his codefendant (whose arraignments were delayed seven years and four years, respectively, while they were incarcerated in Federal prison) based on violations of their speedy trial rights, erred in allowing the defendant's motion and properly denied the codefendant's motion, where, although the delay in each case was extraordinary and the Commonwealth's legitimate reasons excused only a reasonable portion of the delay in the defendant's case, the delay in the codefendant's case, in major part, was attributable to his attempt to evade capture prior to the commencement of his Federal prison term, and the defendant and the codefendant each failed to assert his right to a speedy trial or to demonstrate any prejudice. [127-133]

INDICTMENTS found and returned in the Superior Court Department on May 22, 2002.

Motions to dismiss, filed on June 18 and 28, 2010, were heard by *Charles J. Hely,* J.

An application for leave to prosecute an interlocutory appeal in the companion case was allowed by *Ralph D. Gants,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeals were consolidated and reported by him to the Appeals Court.

*Norman S. Zalkind* for Timi Wallace.

*Sarah H. Montgomery,* Assistant District Attorney (*Ursula*

[1]Commonwealth *vs.* Timi Wallace.

*Knight*, Assistant District Attorney, with her) for the Commonwealth.

*Matthew A. Kamholtz* for Nickoyan Wallace.

GRAHAM, J. In June, 2010, the defendants, Nickoyan Wallace and Timi Wallace,[2] indicted in May, 2002, for murder in the first degree, filed motions to dismiss the indictments based on violations of their speedy trial rights under the Sixth Amendment to the United States Constitution, art. 11 of the Massachusetts Declaration of Rights, and Mass.R.Crim.P. 36(d)(3), 378 Mass. 913 (1979).[3]

A judge in the Superior Court conducted a three-day evidentiary hearing on the motions, during which he heard testimony from two law enforcement officers and five assistant district attorneys. In addition, by agreement, the judge received in evidence several documentary exhibits.

Following the hearing, the judge issued a lengthy and comprehensive memorandum of decision and order dated December 6, 2011. After weighing the relevant speedy trial factors, the judge concluded that the Commonwealth's seven-year delay in filing a detainer against Nickoyan was egregious, giving rise to presumptive prejudice that required dismissal of the indictment against him. In contrast, the judge denied Timi's motion to dismiss on the basis that Timi was more responsible for the delay and could not benefit from any prejudice resulting therefrom.

The Commonwealth filed a timely appeal from the dismissal of the indictment against Nickoyan. A single justice of the Supreme Judicial Court for Suffolk County allowed Timi's motion for interlocutory review of the denial of his motion to dismiss, and the cases were consolidated for hearing in this court.

---

[2]Because the defendants and their brothers share a surname, we will refer to them by their first names to avoid confusion.

[3]Timi's motion to dismiss was also based on alleged violations of the Fourteenth Amendment to the United States Constitution and Mass.R.Crim.P. 36(c), 378 Mass. 912 (1979). Rules 36(c) and 36(d) each require the existence of actual prejudice to necessitate dismissal. Rule 36(d)(3) provides in relevant part: "If the prosecutor has unreasonably delayed (A) in causing a detainer to be filed . . . , or (B) in seeking to obtain the defendant's presence for trial, and the defendant has been prejudiced thereby, the pending charges against the defendant shall be dismissed."

*Facts.* "[T]he judge made extensive findings of fact, which we adopt as being well founded, after taking 'an independent view of the evidence and analyz[ing] its significance without deference.' " *Commonwealth* v. *Carr,* 464 Mass. 855, 858 (2013), quoting from *Commonwealth* v. *Clarke,* 461 Mass. 336, 341 (2012).[4] The relevant facts may be summarized as follows.

On March 26, 2000, the defendants' brother, Tasfa Wallace, was shot to death when multiple gunshots were fired through the door to an apartment in the Dorchester section of Boston. Immediately prior to the shooting, the victim's girlfriend, Ingrid Francouer, who was inside the apartment, looked through the peephole in the door and saw the defendants, whom she recognized, standing on the other side of the door. In addition to Francouer, the landlord of the apartment, who knew the defendants and had seen them enter the premises immediately prior to the shooting, saw the defendants leave the premises immediately after the shooting and leave the scene in a brown 1994 Nissan Maxima sedan (brown Maxima).

On March 27, 2000, the Dorchester Division of the Boston Municipal Court Department issued complaints and arrest warrants charging each defendant with murder and unlawful possession of a firearm. The Boston police attempted to arrest the defendants but were unable to locate them at their usual addresses or with relatives. Subsequently, at the request of the Boston police and the Suffolk County district attorney's office, the United States District Court for the District of Massachusetts issued Federal fugitive warrants for the defendants on Federal charges of unlawful interstate flight to avoid prosecution.

In April, 2000, a Providence, Rhode Island, police officer spotted the brown Maxima and questioned the operator, Ojomo Wallace, later determined to be the defendants' brother. Ojomo gave the officer his address of 187 Washington Street, Providence, an address that also had been used by Timi.

On September 25, 2000, the defendants, armed with handguns,

---

[4]When reviewing rulings made on speedy trial claims and motions under Mass.R.Crim.P. 36, we give deference to the findings of the motion judge made pursuant to an evidentiary hearing, to the extent the findings are supported by the evidence, but we reach our own determination on the legal conclusions drawn therefrom. See *Commonwealth* v. *Martin,* 447 Mass. 274, 284 (2006); *Commonwealth* v. *Burhoe,* 3 Mass. App. Ct. 590 (1975).

robbed a gun store in Providence of six handguns. Approximately two weeks later, the Providence police conducted surveillance of a third-floor apartment at 181 Pleasant Street in Providence. Nickoyan was in the apartment at the time; Timi was not. When police approached the building to gain entry, Nickoyan placed a telephone call to Timi. Federal agents and officers of both the Providence and Boston police arrested Nickoyan on a Rhode Island arrest warrant, and on the Federal fugitive warrant based on the Massachusetts murder charge.

On October 18, 2000, both defendants were indicted in the United States District Court for the District of Rhode Island on Federal charges stemming from the armed robbery of the gun store. At the time the defendants were indicted on those Federal charges, Timi was still at large, and therefore a second Federal warrant was issued for his arrest based on the new charges.

Nickoyan was arraigned in Rhode Island on the Federal charges on October 26, 2000, and ordered held in pretrial detention. On November 8, 2001, he was convicted, in the United States District Court for the District of Rhode Island, of the four Federal charges related to the armed robbery. He was sentenced on March 19, 2002, to seventeen years in Federal prison.

On May 22, 2002, indictments charging murder in the first degree were returned against the defendants by a Suffolk County grand jury. At the time the indictments were returned, Nickoyan was serving his Federal prison sentence, and Timi remained at large. Timi remained at large until he was arrested on July 20, 2004, in an apartment in the Bronx, New York. Three weeks after his arrest, Timi was arraigned in the United States District Court for the District of Rhode Island on the armed robbery and related charges. He was tried and convicted on those charges and sentenced on January 21, 2005, to twenty-five years in Federal prison.

The Commonwealth filed a detainer under the Interstate Agreement on Detainers (Agreement), St. 1965, c. 892, § 1, against Nickoyan on or about June 2, 2009, seven years, two months, and approximately fourteen days after he began serving his Federal sentence.[5] Two weeks later, the Commonwealth filed a

---

[5]The defendants' speedy trial rights attached on March 27, 2000, when the Dorchester Division of the Boston Municipal Court Department issued

detainer against Timi, four years, four months, and approximately twenty-five days after he began serving his Federal sentence.

After the detainers were filed, the Commonwealth followed the appropriate procedures under the Agreement for obtaining temporary custody of the defendants. Each was given the opportunity to sign a form, prescribed under art. III of the Agreement, by which he could request a final disposition of the Massachusetts murder indictment. Pursuant to art. III, if the proper procedures are followed by all parties, the receiving State (here, Massachusetts) must bring a defendant to trial within 180 days after receiving the defendant's request for final disposition of the charge. Each defendant refused to sign the form.

In December, 2009, Boston police officers took custody of Nickoyan at a Federal prison in West Virginia, and he was arraigned in the Superior Court in Massachusetts on the murder indictment on December 9, 2009. Timi was arraigned in the Superior Court in Massachusetts on the murder indictment on November 25, 2009.

*Discussion.* Criminal defendants enjoy the right to a speedy trial under both the Sixth Amendment to the United States Constitution and art. 11 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Butler*, 464 Mass. 706, 707 (2013). The burden is on the defendant to prove that any delay in bringing him to trial is sufficiently prejudicial to warrant dismissal of the indictment against him. See *Commonwealth* v. *Carr*, 464 Mass. at 860. See also *Commonwealth* v. *Gove*, 366 Mass. 351, 361 (1974).

We begin our speedy trial analysis by determining the threshold inquiry relative to "presumptive prejudicial delay." "Simply to trigger a speedy trial analysis, an accused must allege that the

complaints charging the defendants with murder and carrying firearms without a license and issued arrest warrants for them. The Commonwealth did not file requests for temporary custody of the defendants until July, 2009. The defendants were responsible for portions of the delay because they evaded the police by fleeing the jurisdiction and went on to commit other serious crimes. The judge calculated the delay using the dates on which the defendants began serving their Federal sentences and the dates on which the Commonwealth filed detainers to gain custody of the defendants, subtracting any delays caused by the defendants. At the time the detainers were filed, Nickoyan was being housed in a Federal prison in Ohio, and Timi was housed in a Federal prison in Kentucky.

interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett* v. *United States*, 505 U.S. 647, 651-652 (1992) (*Doggett*), quoting from *Barker* v. *Wingo*, 407 U.S. 514, 530-531 (1972) (*Barker*). If the accused establishes "presumptive prejudice, courts apply the four-factor *Barker* test to evaluate whether the defendant's constitutional right to a speedy trial has, in fact, been violated. . . . Further analysis of a speedy trial claim under *Barker* is necessary because 'presumptive prejudice cannot alone carry a [speedy trial] claim' but is instead 'part of the mix of relevant facts.' " *Commonwealth* v. *Butler*, 464 Mass. at 710, quoting from *Doggett, supra* at 655-656.

In order to determine whether the accused has been subjected to the evils against which the speedy trial clause is directed,[6] we make a contextual inquiry using the nonexhaustive, four-part

---

[6]See *Barker*, 407 U.S. at 519-521, in which the United States Supreme Court listed the evils that the right to a speedy trial right was designed to address. The Court stated:

> "In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. . . . Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

> "If an accused cannot make bail, he is generally confined . . . in a local jail. This contributes to the overcrowding and generally deplorable state of those institutions. Lengthy exposure to these conditions has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult. . . . Finally, lengthy pretrial detention is costly. . . . [S]ociety loses wages which might have been earned, and it must often support families of incarcerated breadwinners." (Footnotes omitted.)

However, a reviewing court's function "is not to slap the Government on the wrist for sloppy work or misplaced priorities, but to protect the legal rights of those individuals harmed thereby." *Doggett*, 505 U.S. at 670-671 (Thomas, J., dissenting).

balancing test set forth in *Barker*, 407 U.S. at 530. "Under this framework, a reviewing court weighs (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant." *Commonwealth* v. *Carr*, 464 Mass. at 801. "[T]hey are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Barker, supra* at 533. Application of these factors requires "a balancing test, in which the conduct of both the prosecution and the defendant are weighed," with each case to be decided on an ad hoc basis after careful review of the facts of the particular case. *Id.* at 530.[7]

a. *Length of delay.* The delay in each of these cases is extraordinary. In Nickoyan's case, over nine years elapsed from the time of his arrest in 2000 to arraignment, and over seven years from the commencement of his Federal prison term in 2002 to arraignment. The delay weighs heavily against the Commonwealth. In Timi's case, over four years elapsed between the commencement of his Federal prison term in 2005 and his arraignment. The delay in Timi's case also weighs against the Commonwealth.

b. *Reason for delay.* "The United States Supreme Court has observed that 'different weights should be assigned to different reasons' for a delay in bringing a defendant to trial. Weighing most heavily against the government would be '[a] deliberate attempt to delay the trial in order to hamper the defense.'" *Commonwealth* v. *Carr*, 464 Mass. at 861, quoting from *Barker*, 407 U.S. at 531. Here, the judge found that there were legitimate reasons for the Commonwealth's delay in prosecuting the cases. Specifically, he found that the delay was caused by the Commonwealth's difficulty in tracking the defendants' Federal prosecutions; its desire to try the defendants in a single trial;[8] the delay inherent in the process of retrieving the defendants

---

[7]Each instance of a claim of violation of speedy trial rights "has its own singularities, which makes precedent a somewhat imperfect guide." *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984).

[8]Nickoyan was, in part, responsible for the lengthy delay in bringing the case to trial. The motion judge made the following finding: "On October 5, 2000, Federal agents and officers of the Providence Police and the Boston

from their respective Federal prisons; the turnover in the district attorney's office (five assistant district attorneys were involved at different times in the prosecution of the charges against the defendants); and the high number of murder cases in the district attorney's office.[9] Nonetheless, we conclude, as did the motion judge, that "[t]he Commonwealth's legitimate reasons for the delay can excuse only a reasonable portion of the [seven-year] delay."[10] Thus, in Nickoyan's case this factor weighed against the Commonwealth.

In Timi's case, the major portion of the delay in bringing him to trial was attributable to his attempt to evade capture. Accordingly, the delay here weighs against Timi.

c. *Defendants' assertion of their speedy trial rights.* At no point prior to the time the Commonwealth filed the Federal detainers did either of the defendants move for a speedy trial. The defendants were incarcerated on the Federal charges for years, yet even after the detainers were filed, they refused to sign forms requesting speedy trials on the present charges. Although courts do not "insist that a defendant must storm the courthouse and batter down the doors to preserve his right to a speedy trial," *Commonwealth* v. *Butler*, 464 Mass. at 716, a defendant is required to make some showing that he desires a speedy trial. See *Barker*, 407 U.S. at 532 ("We emphasize that failure to assert the [speedy trial] right will make it difficult for a defendant to prove that he was denied a speedy trial").

Nickoyan was well aware of the charges against him. The motion judge found that the defendants "knew that the Boston

---

Police arrested Nickoyan Wallace in an apartment at 181 Pleasant Street, Providence. Nickoyan Wallace saw the law coming. He placed a phone call to Timi Wallace." Nickoyan thus enabled Timi to avoid capture and remain at large for several years.

[9]The judge concluded that the delays were the result of what is generally characterized as "negligence" rather than bad faith. Specifically, he found: "There was no bad faith by the prosecuting officials. The Commonwealth's delays were not undertaken to gain some impermissible advantage at trial. *Doggett*, 505 U.S. at 656. The delays were the result of a cumulative lack of attention by the District Attorney's Office to the duty to file detainers in this case within a reasonable time."

[10]We note that in the Federal armed robbery and related charges, the defendant demanded a speedy trial and, thereafter, the case was tried promptly. Here, the murder case was not complex, and the record indicates that all necessary witnesses were available for speedy resolution of the matter.

Police were looking for them to arrest them for the murder" when they fled the jurisdiction shortly after killing the victim, and that "Timi . . . was informed of the existence of the murder indictment in his first Federal sentencing" in January, 2005. Moreover, at Nickoyan's arraignment on the Federal charges on October 26, 2000, the assistant United States attorney informed the court that Nickoyan was wanted in Massachusetts "in connection with the murder of a brother."

Despite their knowledge of the murder charges, neither defendant asserted his right to a speedy trial.[11] Given their failure to assert their right to a speedy trial combined with efforts which caused portions of the delay, this factor weighs heavily against the defendants.

d. *Prejudice to the defendants.* The motion judge concluded that although no showing of actual prejudice had been made by either defendant, the delay in Nickoyan's case was egregious and, thus, this factor tilted in Nickoyan's favor. See *Doggett*, 505 U.S. at 655 ("excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify"); *Rashad* v. *Walsh*, 300 F.3d 27, 41 (1st Cir. 2002), cert. denied, 537 U.S. 1236 (2003) (*"Doggett* establishes that, when the pretrial delay is grossly excessive, the fourth *Barker* factor can tilt in the defendant's favor even though no showing of actual prejudice has been made"). Thus, even if a defendant does not present evidence of specific prejudice at this stage of the analysis, "he is entitled to some degree of presumptive prejudice that the Commonwealth can rebut with evidence that any delay left the defendant's 'ability to defend himself unimpaired.' " *Commonwealth* v. *Butler*, 464 Mass. at 717, quoting from *Doggett*, 505 U.S. at 658 n.4.

"Prejudice . . . should be assessed in light of the interests of defendants which the speedy trial right was designed to protect[:] . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant

---

[11]At his Federal arraignment, Nickoyan's counsel stated that Nickoyan wished to have an expeditious trial in the Federal matter, and the judge there acknowledged that Nickoyan had requested a speedy trial.

adequately to prepare his case skews the fairness of the system." (Footnote omitted.) *Barker*, 407 U.S. at 532.

A close review of these interests reveals that the defendants failed to demonstrate any prejudice. They were not subjected to oppressive pretrial incarceration. Nickoyan was serving sentences in Federal prison during the relevant pretrial period, and Timi evaded capture for most of that time. In addition, the defendants suffered minimal pretrial anxiety and concern as a result of the lengthy delay between accusation and trial.[12]

Finally, there was no evidence that the Commonwealth's delay in filing the detainers caused any specific harm to either defendant's defense. The judge found that "[n]o previously available physical or testing evidence has been lost. Only one known potential witness has died, Boston Police Detective Edward Dooley . . . [who] learned of no evidence that would be important to the defense or the Commonwealth at the trial. The Boston Police have located or have the ability to locate every other known witness in the case." Consequently, any defect in a witness's memory or any other deterioration of evidence serves only to prejudice the Commonwealth.[13] It is clear from the judge's findings "that the Commonwealth effectively rebutted the presumption of prejudice and that the prejudice factor counts against the defendant[s]." *Commonwealth v. Butler*, 464 Mass. at 718-719.

Here, because of the excessive delay, the task of balancing the factors, especially in Nickoyan's case, is difficult, and we consider the cases to be close. However, the record strongly indicates that neither defendant wanted a speedy trial. The defendants were already in prison serving lengthy sentences on Federal charges and were facing mandatory life sentences if convicted

---

[12]The motion judge rejected as speculative the defendants' claims that they were prejudiced by lack of appointed counsel who might have been able to negotiate pleas that would have resulted in State sentences served concurrently with their Federal sentences. The judge also rejected Timi's claim that the delay had a significant effect on his classification and treatment in Federal prison.

[13]As the court stated in *Commonwealth* v. *Butler*, 464 Mass. at 717-718, "the passage of time is a double-edged sword. While at once affecting the defense, delay in bringing a case to trial may also make it more difficult, sometimes impossible, for the prosecution to carry its burden of proof beyond a reasonable doubt."

on the murder charges. Moreover, the Commonwealth's case is dependent upon the availability and memory of, essentially, two witnesses. The longer delay improves the defendants' chances that the witnesses will be unavailable or that their memories will fade. Therefore, the defendants were not deprived of their due process rights to speedy trials.

Accordingly, that portion of the order allowing Nickoyan's motion to dismiss is reversed. The portion of the order denying Timi's motion to dismiss is affirmed.[14]

*So ordered.*

---

[14]In view of the judge's well-supported findings that the defendants did not demonstrate any actual prejudice as a result of the delay, we reject the defendants' claims to violation of their right to a speedy trial under Mass.R.Crim.P. 36(b).