NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11705
SJC-11707

COMMONWEALTH  vs.  NICKOYAN WALLACE
(and a companion case[1]).


Suffolk.     February 4, 2015. - June 30, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, & Lenk,
JJ.


Homicide.  Constitutional Law, Speedy trial, Delay in
commencement of prosecution.  Due Process of Law, Delay in
commencement of prosecution.  Practice, Criminal, Speedy
trial, Delay in commencement of prosecution, Capital case.



Indictments found and returned in the Superior Court
Department on May 22, 2002.

Motions to dismiss, filed on June 18 and 28, 2010, were
heard by Charles J. Hely, J.

An application for leave to prosecute an interlocutory
appeal in the companion case was allowed by Gants, J., in the
Supreme Judicial Court for the county of Suffolk, and the
appeals were consolidated and reported by him to the Appeals
Court.  After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Norman S. Zalkind (Ruth O'Meara-Costello with him) for Timi
Wallace.

---

[1] Commonwealth vs. Timi Wallace.

Matthew A. Kamholtz for Nickoyan Wallace.

Sarah Montgomery Lewis, Assistant District Attorney, for the Commonwealth.

J. Anthony Downs, Samuel Sherry, Catherine Curley, Matthew R. Segal, Jessie Rossman, & Chauncey B. Wood for American Civil Liberties Union Foundation of Massachusetts & another, amici curiae, submitted a brief.

SPINA, J. In this consolidated interlocutory appeal, we consider whether the Commonwealth's delay in obtaining custody of the defendants Nickoyan Wallace (Nickoyan) and Timi Wallace (Timi),[2] brothers, from Federal prison authorities impermissibly affected their right to a speedy trial. In considering this question in motions to dismiss due to delays totaling more than nine years,[3] a judge of the Superior Court found that Timi's right to a speedy trial had not been violated but that of Nickoyan had. A single justice of this court allowed the interlocutory appeals of Timi and the Commonwealth, consolidated the cases, and reported them to the Appeals Court. The Appeals Court held that the Commonwealth had not violated the speedy trial right of either brother, affirming the denial of Timi's motion and reversing the allowance of Nickoyan's. Commonwealth v. Wallace, 85 Mass. App. Ct. 123 (2014). This court granted

---

[2] The victim and defendants are brothers and share the same surname. Accordingly, we refer to them by their first names where possible to avoid confusion.

[3] The total delays in these cases are over nine years. To avoid confusion, at various points in this opinion we focus our analysis on smaller portions of the total delays. The total delays for both cases remain the same.

the brothers' applications for further appellate review. We affirm the decision of the trial court to deny Timi's motion and to allow Nickoyan's motion.[4]

1. Background. The essential facts are not in dispute, and we recite them as the motion judge found, reserving further details for discussion of the specific issues raised. On March 26, 2000, the victim, Tasfa Wallace, was shot to death through the door of his apartment. Moments before the shooting, the victim's girl friend had answered knocking at the door and had seen Timi and Nickoyan, the victim's brothers, through the door's peephole. Other witnesses saw Timi and Nickoyan entering and leaving the building at the time of the shooting. The next day, March 27, criminal complaints accusing Nickoyan and Timi of murder in the first degree issued from the Dorchester Division of the Boston Municipal Court Department. Boston police officers searching for Timi and Nickoyan could not find them and subsequently learned that both brothers had fled the Commonwealth.

In April, 2000, the United States District Court for the District of Massachusetts issued Federal fugitive warrants naming the defendants and accusing them of the Federal charge of unlawful interstate flight to avoid prosecution. As a result of

---

[4] We acknowledge the amicus brief filed by the American Civil Liberties Union Foundation of Massachusetts and the Massachusetts Association of Criminal Defense Lawyers.

the entry of Federal officials into the search, the focus quickly narrowed on the possibility that the defendants were in Providence, Rhode Island. On September 25, the defendants committed an armed robbery of a gun store in Providence. Days later, on October 5, law enforcement officials arrested Nickoyan at an apartment in Providence. As police surrounded the apartment to arrest him, Nickoyan was able to telephone Timi. Timi fled and was not arrested until July 20, 2004. Both defendants were indicted for armed robbery and related charges by a Federal grand jury on October 18, 2000.

Nickoyan was arraigned on the Federal armed robbery charges on October 26, 2000, and placed in pretrial custody. Nickoyan's trial ended in a conviction on November 8, 2001, and his sentence of seventeen years began on March 19, 2002. Nickoyan immediately appealed from his convictions. The United States Court of Appeals for the First Circuit affirmed his conviction in August, 2003. United States v. Wallace, 71 Fed. Appx. 868 (1st Cir. 2003).

Timi's arrest, arraignment, and trial in Federal court came soon thereafter. Timi was convicted and began his sentence of twenty-five years on January 21, 2005. He also immediately appealed from his conviction. The First Circuit affirmed his convictions in August, 2006. United States v. Wallace, 461 F.3d 15 (1st Cir. 2006). Both defendants also pursued appeals

collaterally attacking the propriety of their sentences.  See United States v. Wallace, 573 F.3d 82 (1st Cir.), cert. denied, 558 U.S. 1036 (2009); United States vs. Wallace, No. 06-2606 (1st Cir. May 23, 2008).

Following Nickoyan's Federal trial, a Massachusetts grand jury issued indictments against Nickoyan and Timi accusing them of the murder of Tasfa.  Electronic mail messages obtained from the district attorney's office demonstrate that prosecutors were aware that both Nickoyan and Timi were in Federal custody.  The case was assigned to several assistant district attorneys over the period from 2000 until 2007.  Not until 2009 did prosecutors initiate the necessary steps to gain custody of Nickoyan and Timi from Federal prison authorities under the Interstate Agreement on Detainers (IAD).  St. 1965, c. 892, § 1.  Detainers against both Nickoyan and Timi were issued on July 16, 2009.  Nickoyan was arraigned in Superior Court on December 9, 2009, and Timi on November 25, 2009.

2.  Interstate Agreement on Detainers.  As we previously have explained, the IAD establishes the "procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial."  Commonwealth v. Copson, 444 Mass. 609, 611 (2005), quoting Cuyler v. Adams, 449 U.S. 433, 436 n.1 (1981).  The IAD only applies to persons who have "entered upon

a term of imprisonment in a penal or correctional institution of a party state." St. 1965, c. 892, § 1, art. III (a). The Federal government is a party State. Id. at § 1, art. II (a).

The necessary first step to applicability of the IAD is the filing of a detainer by the jurisdiction seeking custody. See St. 1965, c. 892, § 1, art. I (regulating determination of status of any and all detainers). A detainer is "a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." Copson, supra at 611 n.1, quoting Alabama v. Bozeman, 533 U.S. 146, 148 (2001). Once a detainer is filed, the IAD governs the procedures by which either a party State or a prisoner may request the disposition of any untried charges. Copson, supra at 611. If a party State requests custody of a prisoner to pursue untried charges, trial must commence within 120 days of arrival of the prisoner in the receiving State. St. 1965, c. 892, § 1, art. IV (c). If a prisoner against whom a detainer is filed requests disposition of untried charges, the party State filing the detainer must bring the detainer to trial within 180 days of the delivery of the prisoner's request to the prosecuting officer and the appropriate court. Id. at § 1, art. III (a). Failure to abide by either of these time limits

requires that the party State filing the detainer dismiss the charges with prejudice.  Id. at § 1, art V (c).

3.  Discussion.  The defendants allege that their right to a speedy trial under the Sixth Amendment to the United States Constitution and art. 11 of the Massachusetts Declaration of Rights has been violated by the years-long delays between the issuance of the criminal complaints accusing them of the murder of their brother and their arraignments for that crime.  In reviewing a motion to dismiss because of a speedy trial violation, we give deference to the findings of the motion judge, but we may reach our own conclusions.  See Commonwealth v. Martin, 447 Mass. 274, 280 (2006).  "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  Doggett v. United States, 505 U.S. 647, 651-652 (1992), citing Barker v. Wingo, 407 U.S. 514, 530-531 (1972).  When a defendant has demonstrated an unreasonable delay giving rise to the possibility of prejudice, we utilize the four-factor balancing test first set out in Barker to determine whether the defendant's constitutional right to a speedy trial has been violated by the delay.  Doggett, supra at 651, citing Barker, supra at 530.  The presumption of prejudice derived from a delay cannot be the sole basis of a speedy trial claim but rather is

"part of the mix of relevant facts."  Doggett, supra at 655-656.
In determining whether the right to a speedy trial has been
violated, we must weigh (i) the length of the delay, (ii) the
reasons for the delay, (iii) the defendants' assertions of their
right to a speedy trial, and (iv) the prejudice to the
defendants (through the lens of Doggett).  See Commonwealth v.
Butler, 464 Mass. 706, 714-715 (2013).  See also Barker, supra
at 530-533.  While we ultimately decide this case under the
right to a speedy trial enshrined in art. 11, the analysis is
analogous to that of the Federal right.  Butler, supra at 709
n.5.

a.  Length of the delays.  Length of delay "is actually a
double enquiry."  Doggett, 505 U.S. at 651.  An unreasonable
delay is the trip wire giving rise to speedy trial analysis.
Id.  In Massachusetts, we calculate this time beginning from the
moment of formal accusation -- in this case, from the moment the
criminal complaints issued from the Boston Municipal Court on
March 27, 2000.  Butler, 464 Mass. at 713.[5]  The almost ten-year
delays certainly are sufficient to trigger a speedy trial

_____

[5] Less clear in this instance is whether the clock tolls at
the filing of the detainer for both defendants in July, 2009, as
urged by the Commonwealth, or their arraignments in late 2009,
as the defendants would have it.  The nearly six month
difference is immaterial in our analysis given the total delays
of over nine years, and we need not decide this question on
these facts.  We note that the Interstate Agreement on Detainers
(IAD) itself does not set a time limit on when a detainer must
be filed.  See St. 1965, c. 892, § 1.

analysis under Barker.  See Doggett, supra at 652 (delay of
eight and one-half years); Butler, supra at 715 (ten-year
delay).

We additionally weigh them independently as a factor.
Doggett, supra at 651-652.  The delays are weighted according to
the reasons put forth for their justification under the second
factor.  Barker, 407 U.S. at 531.  In any instance, these delays
weigh against the Commonwealth.[6]

b.  Reasons for the delays.  The reason for the delay is
the "flag all litigants seek to capture."  United States v. Loud
Hawk, 474 U.S. 302, 315 (1986).  Weighing most heavily against
the government are deliberate attempts at delay.  Barker, 407
U.S. at 531.  Of equal weight but opposite import to a defendant
are "delays requested or otherwise orchestrated by the
defendant, such as evading capture by authorities."
Commonwealth v. Carr, 464 Mass. 855, 861 (2012).  The more
neutral reasons "such as negligence or overcrowded courts should
be weighed less heavily but nevertheless should be considered
since the ultimate responsibility for such circumstances must

---

[6] As noted by the defendants, this factor measures the total
delay from formal accusation.  The assignment of reasons for a
particular part of the delay remains the second prong of the
analysis under Barker v. Wingo, 407 U.S. 514, 530 (1972).  See
Commonwealth v. Carr, 464 Mass. 855, 861 (2013) (measuring
entirety of delay caused by defendant's flight).

rest with the government rather than with the defendant."
Barker, supra at 531.

The defendants both urge that the only part of the delays that should be attributed to them is the period between the issuance of the complaints and their individual arrests. For Nickoyan, this period is about six months, and for Timi, this period is just over four years. The brothers urge that the reason for the remaining delays is wholly attributable to the Commonwealth.

We do not interpret the delays as the defendants urge. While we agree that the delays between issuance of the complaints and their arrests are attributable to the defendants due to their flight, we do not think their complicity in the orchestration of the delays stops there. Both Timi and Nickoyan claim that because they were arrested on fugitive warrants issued due to Massachusetts charges but were first subjected to trial on the Federal armed robbery indictments, the delays from Federal arraignment to Federal sentencing should not count against them. Rather, they argue, the reason for the delays rests with the Commonwealth because the Commonwealth failed to assert its primacy in prosecuting the brothers.

We will not fault the Commonwealth for not insisting on being the first in line to prosecute a fugitive in out-of-State Federal custody who has committed additional serious crimes

while in flight.  Instead, we view the defendants' Federal trial as an extension of their conscious decision to flee prosecution and commit the intervening crime.  Indeed, were we to view the situation in the light now urged by the defendants and require the Commonwealth to bring its case before the Federal prosecution, it is difficult to see how they would not attempt a similar claim of a violation of the speedy trial right at the Federal level in this scenario because Federal authorities would have relinquished in-hand custody of the defendants only to try them at a later date after their Massachusetts trial. Furthermore, the judge took judicial notice from personal experience of the difficulty of obtaining prisoners in Federal custody while Federal authorities were actively prosecuting those prisoners.  The period between Federal arraignment and Federal sentencing must weigh against the defendants.  Cf. United States v. Grimmond, 137 F.3d 823, 828 (4th Cir.), cert. denied, 525 U.S. 850 (1998) ("Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay").  Cf. also Commonwealth v. Domanski, 332 Mass. 66, 72 (1954); Ableman v. Booth, 62 U.S. (21 How.) 506, 524 (1858) ("No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued . . .").

More difficult to weigh is the period after the defendants' Federal sentencing when they became subject to the IAD.  The motion judge found this period to be characterized by a "cumulative lack of attention by the [d]istrict [a]ttorney's [o]ffice to the duty to file detainers in this case within a reasonable time."  In Nickoyan's case, this cumulative lack of attention lasted over seven and one-half years, enough for the judge to determine Nickoyan's right to a speedy trial had been violated.  Nickoyan, of course, urges that the motion judge was correct in this finding.  Timi's delay between sentencing and the filing of the detainer was shorter, just over four years.  The motion judge found that Timi's right to a speedy trial had not been violated because the part of the delay caused by Timi's deliberate flight was longer than that caused by the government's neglect in filing a detainer.

Timi argues that this delay should weigh heavily enough against the Commonwealth to warrant reversal.  He points out that the years-long failure to gain custody indicates the low prosecutorial priority to bring him to trial and that the failure of each successive assistant district attorney to act should compound the failure of the previous one.  Moreover, he disputes the motion judge's calculations of the length of delay

weighing against him and the Commonwealth.[7]  Finally, he says that the Commonwealth's failure even to attempt to procure him prior to his Federal sentencing should cause the delay after sentencing to weigh even more heavily against the Commonwealth.

While we acknowledge the validity of Timi's arguments with the exception of the judge's calculations of the delay, we do not grant them the weight he would have us give them.  We have already stated that the moment of formal accusation marks the beginning of the calculation of delay.  Likewise, we have discussed the issue of Federal authorities pursuing a prosecution prior to the Commonwealth.  The delay caused by Timi from his flight through his Federal sentencing is roughly commensurate with the Commonwealth's delay in filing a detainer.  These comparable delays are not weighed equally, however.  Timi's deliberate orchestration of the delay weighs more heavily than the Commonwealth's mere neglect.  Accordingly, the reason for the entirety of the delay -- as set out in Barker -- must ultimately lie at Timi's feet due to the greater weight placed on his contribution to the delay.

---

[7] Timi argues that the period of about eight months between the vacation of his sentence by the Federal Court of Appeals and his resentencing should not be weighed against him as the motion judge did.  We agree with the motion judge that this time should count against him, as it is a consequence of his deliberate action while fleeing the Massachusetts charges.

The reason for delay in Nickoyan's case does not require such fine balancing of weights. The delay of seven and one-half year between Federal sentencing and the detainer seems excessive and the motion judge counted the length of time heavily. The Commonwealth argues that the explanation of this delay lies in a confluence of individual factors that make the Commonwealth's delay less egregious, if not outright excusable. While we do agree with the Commonwealth that the fault is not so indivisible and uniform as Nickoyan would have us view it, we look with extreme disfavor on a delay of this length.

The Commonwealth puts forth the initial premise that its intent throughout the entirety of this case was to try both defendants together. The judge recognized that such a desire could permit some delay. Indeed, from a case management perspective, such a desire would seem eminently logical. The brothers are accused of acting in concert at the same place and at the same time. A prosecution of one would involve almost entirely the same evidence that could be used against the other. The idea that the delay in attempting to coordinate the custody of codefendants so that the government might jointly prosecute them for substantially the same criminal offense arising from the same set of facts has some support in Sixth Amendment jurisprudence. See United States v. Casas, 425 F.3d 23, 34 (1st Cir. 2005), cert. denied, 547 U.S. 1061 (2006) ("the joint

prosecution of defendants involved in the same drug trafficking conspiracy is justified as a means of serving the efficient administration of justice").  Cf. Parker v. United States, 404 F.2d 1193, 1196 (9th Cir. 1968) (substantial public interest in joint trials because joinder "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once").  We do not go so far as to say that the interest in jointly trying codefendants should or can rationalize a seven-year delay.  Rather, we recognize that some delay may sometimes be justified when seeking to satisfy the public interest in this respect.  It is not so justified here.

Having accepted the premise that serving the public interest through a joint trial was the Commonwealth's overarching goal, we can analyze its actions with more nuance. The Commonwealth stresses that its major concern with filing a detainer was the invocation of the speedy trial provisions of the IAD by one of the defendants.  In such a circumstance, the Commonwealth understood that it had to commence trial within 120 days of the receipt of a request by a prisoner to dispose of the detainer or risk dismissal of the charges with prejudice.  With

such a drastic scenario of dismissal hanging in the balance of the decision of when to file a detainer, the Commonwealth acted cautiously in proceeding against the defendants. A hasty or ill-timed move on the part of the prosecution would result in the complete inability to pursue the serious charge of murder in the first degree. Barker itself recognized that the underlying charge can have an effect on the leeway a reviewing court will give the government in analyzing a speedy trial challenge. Barker, 407 U.S. at 531 ("To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").

Yet the important fact remains that the Commonwealth could have filed a detainer against Nickoyan at any time postsentencing because he was serving a "term of imprisonment" under the IAD but did not do so. St. 1965, c. 892, § 1, art. III (a). Notwithstanding the early applicability of the IAD, the Commonwealth operated under a legally mistaken impression that a request for the transfer of custody of the defendants from the Federal authorities was not a practical option until the dust from the posttrial motions and appeals had settled. If the Commonwealth was waiting for a moment when it could be reasonably certain it would gain custody of both defendants at the same time to try them within the time prescribed by the IAD,

we can certainly entertain that the Commonwealth erred on the side of what it viewed as reasonable caution, especially in light of, as further urged by the Commonwealth, the more immediate and pressing caseload of the assistant district attorneys.  While we appreciate Nickoyan's implicit assertion that the delay attributed to Timi cannot also weigh against him, the fact remains that their cases are essentially the same and the degree of fault attributable to the Commonwealth cannot be viewed through a lens that does not take into consideration the confusion that flowed from the defendants' efforts to avoid prosecution.

None of these factors individually or collectively, however, can change the fact that the reason for the delay after Federal sentencing in Nickoyan's case is ultimately the Commonwealth's negligence.  We emphasize this point.  As we have explained, determining the ultimate reason for the delay in Nickoyan's case requires us to balance a two-year delay resulting from deliberate flight and a Federal trial with the seven-year long negligence of the Commonwealth to bring charges. This balance is not the simple math that seven is greater than two.  Nickoyan's deliberate actions weigh far more heavily than the Commonwealth's failures, but even accepting the Commonwealth's justifications, the seven years of prosecutorial inaction are excessive and outweigh that part of the delay

attributable to Nickoyan. We agree with the trial judge, however, that the delay occasioned by the Commonwealth was not deliberate, but negligent. The reason for the delay in Nickoyan's case lies at the Commonwealth's feet.

c. Defendants' assertion of their speedy trial right. "[A] defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight," but "the failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 531-532. While it is not necessary that "a defendant must storm the courthouse and batter down the doors to preserve his right to a speedy trial," we do require some affirmative action. Butler, 464 Mass. at 716. We keep in mind the presumption that inaction cannot constitute waiver of a constitutional right. See Barker, supra at 525-526. The parties do not dispute that neither Timi nor Nickoyan asserted a right to a speedy trial prior to the motion to dismiss.

The motion judge found that Timi and Nickoyan never took any steps consistent with an assertion of a right to a speedy trial. Both defendants were aware that the Boston police were looking for them when they fled the Commonwealth in 2000. Additionally, Timi was informed on the record at both his Federal arraignment and sentencing of the existence of murder charges in Massachusetts. Furthermore, Timi and Nickoyan

refused to sign a form requesting a speedy disposition of the charges after the detainer had been filed.

Timi and Nickoyan argue that the failure of each to assert his right to a speedy trial should not weigh against him until he had formal notice of the indictment against him, a moment that occurred much later in the period in question. Judging the defendant's assertion of the right to a speedy trial only after formal notice of the indictment creates a standard that elevates form over substance. We decline to adhere to a rule requiring receipt of formal notice, nor do we think the defendants' position finds support in case law. The right to a speedy trial attaches upon formal accusation, Butler, 464 Mass. at 713, here, the issuance of the complaints of which the defendants had notice. From his flight to evade prosecution after the murder of his brother as well as the multiple times he was informed of the existence of murder charges in Massachusetts during the process of his Federal trial, we reasonably can infer that Timi had sufficient notice of the charges against him to weigh his failure to assert his right to a speedy trial in the Commonwealth's favor.

Similarly unavailing is Nickoyan's claim that he lacked formal notice of the indictment against him and that the Commonwealth deliberately withheld information of the charge from him. We see no evidence in the record before us that the

Commonwealth deliberately hid the fact of the indictment from Nickoyan as he argues. At his arraignment on the Federal armed robbery charges in October, 2000, the fact that Nickoyan was wanted as a fugitive from a murder charge in Massachusetts was part of the government's argument as to why Nickoyan should not be released from pretrial custody. We again reject the argument that the lack of formal notice of the indictment relieves a defendant of the impact of a failure to assert the right to a speedy trial for the length of time at issue here.[8]

Timi and Nickoyan counter that they still should not be faulted because they were unrepresented on the murder charges and were unaware of the right to a speedy trial. In weighing the impact of the defendants' failure to assert their right to a speedy trial, representation by counsel and awareness of the right are factors in the analysis but not prerequisites. The

---

[8] It is important to understand that in the circumstances here, a complaint for murder in the Boston Municipal Court has functional significance under the IAD on detainers. For example, if a murder complaint were pending in the Boston Municipal Court or a District Court, a defendant would be entitled, upon notice under the IAD, to a probable cause hearing under Mass. R. Crim. P. 3 (f), as appearing in 442 Mass. 1502 (2004), within the time provided for trial under the IAD. If, after hearing, no probable cause were found, the defendant would have to be returned to the host State. If after hearing probable case were found, the Commonwealth would have to obtain an indictment and commence trial thereon conformably with the IAD. Alternatively, in lieu of a probable cause hearing, the Commonwealth could satisfy the requirements of the IAD by obtaining an indictment and dismissal of the murder complaint, and by commencing trial on the indictment within the time provided under the IAD.

defendants would have the Commonwealth affirmatively demonstrate that they were aware of the right to a speedy trial in order for the failure to assert it to weigh against them.  See Commonwealth v. Blaney, 5 Mass. App. Ct. 96, 98 (1977) (no indication defendant was aware of right to speedy trial).

In this case, we think such an inquiry unnecessary, and thus, we decline to accept the defendants' contention.  At his Federal arraignment, the judge acknowledged Nickoyan's oral request for a speedy trial.  Nickoyan was not unfamiliar with the legal process -- he filed a private suit against one of the assistant district attorneys in this case.  Nickoyan also refused to sign a form requesting prompt disposition of the charges after the detainer had been filed.  In these circumstances, we think it unlikely that Nickoyan was so naive as to the legal process that his lack of counsel on the State charges and claimed ignorance of the right to a speedy trial should obviate his failure to assert the right.

Similarly, Timi was not unaware of his right to a speedy trial.  He chose not to exercise it.  At his Federal resentencing following a successful appeal, Timi's counsel argued that the pendency of a seven year old murder charge should not impact any new sentence imposed.  Counsel specifically referenced the IAD and its speedy trial provision.  When finally confronted with the opportunity to address the

murder charges after a detainer had been filed, Timi refused to sign the form. If we can draw any inference from his actions, we cannot conclude that Timi acted with the caution that he claims might be expected from an unrepresented defendant but that Timi hoped to avoid prosecution for as long as possible.

To emphasize, the failure by the defendants to assert their speedy trial right is not a waiver of the right itself but simply a factor to be weighed. "The speedy trial right is not one which may be kept in reserve in the event that one's belief that the prosecution has overlooked or decided not to pursue his case proves to be erroneous." Commonwealth v. Look, 379 Mass. 893, 901, cert. denied, 449 U.S. 827 (1980). Here, we find it difficult to accept the defendants' claims of ignorance as the source of their failure to assert the right. Instead, we infer an effort to "fly under the radar." Butler, 464 Mass. at 717. Accordingly, this factor weighs against the defendants more than the Commonwealth but not heavily so. We reiterate that weighing the failure to assert the right is not akin to wholesale waiver.

d. Prejudice to the defendants. This case fundamentally turns on the characterization of the Commonwealth's conduct from the time of the defendants' Federal sentencing until their arraignment in Superior Court and the effect of this delay on the basic interests the Sixth Amendment and art. 11 were designed to protect. The motion judge likened the

Commonwealth's failure to file a detainer under the IAD to neglect.  This determination is entitled to deference.  See Commonwealth v. Martin, 447 Mass. 274, 284 (2006).  The Supreme Court has noted that prosecutorial negligence falls in the middle ground of the spectrum bookended by prosecutorial diligence and bad faith delay.  See Doggett, 505 U.S. at 656-657.  However, official negligence "falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun."  Id. at 657.  "[S]uch is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows."  Id.  Judicial tolerance of such negligence "varies inversely with its protractedness . . . and its consequent threat to the fairness of the accused's trial" (citation omitted).  Id.

Here the only time in question possibly attributable to the Commonwealth -- and thus giving rise to the presumption of prejudice -- is the time between Federal sentencing and arraignment in this case.  For Timi, this period was over four years.  For Nickoyan, it was approximately seven years and three months.  The motion judge characterized this delay as the "result of a cumulative lack of attention by the [d]istrict [a]ttorney's [o]ffice to the duty to file detainers in this case within a reasonable time."

In Doggett, Federal officials attempted to arrest the defendant by going to his parents' residence. 505 U.S. at 649. Informed that the defendant had left the country a few days earlier, the government placed the defendant's name in a database designed to alert when he reentered the country. Id. Subsequently, the investigating officers discovered that the defendant was serving a sentence in a foreign prison. Id. Despite a promise to expel the defendant to the United States upon his release, officials in the foreign jurisdiction allowed the defendant instead to go to a different country. Id. Meanwhile, the alerts in the central database had expired. Id. One year later, the defendant returned to the United States, earned a college degree, married, lived openly under his own name, and stayed within the law. Id. Federal officials, meanwhile, had learned of his entry into the third country but not of his return to the United States. Id. at 649-650. It was only after officials ran a credit check on persons named in outstanding warrants that the defendant was discovered, arrested, and arraigned. Id. at 650.

This discovery, arrest, and arraignment took place eight and one-half years after his indictment and six years after his return to the United States and subsequent adoption of a law-abiding lifestyle. The defendant moved for a dismissal of the charges against him based on a violation of his Sixth Amendment

right to a speedy trial.  Id.  The Federal District Court denied his motion because, although the defendant was blameless for the delay and the government's negligence was entirely to blame, the defendant could not show any particular prejudice to his defense.  Id.

The Supreme Court disagreed.  Id. at 651.  Although the defendant could not show any particularized prejudice, the lapse of time had entitled him to the rebuttable presumption of prejudice.  Id. at 657-658.  The unreasonable delay between formal accusation and trial can produce more than one sort of harm, "including oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and the loss of exculpatory evidence" (quotations and citations omitted).  Id. at 654.  Accord Commonwealth v. Hanley, 337 Mass. 384, 387, cert. denied, 358 U.S. 850 (1958) (giving same rationale for speedy trial right).  "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'"  Doggett, supra, quoting Barker, 407 U.S. at 532.  The court held that the government had not persuasively rebutted the presumption of prejudice.  Doggett, supra at 658 n.4.

The defendant in Doggett had been unaware of the indictments against him.  Id. at 653-654.  It was this lack of

awareness coupled with the delay that impacted one of the interests protected by the speedy trial right -- the impairment of the accused's defense. In explaining how delay and lack of knowledge can impair a defense, Justice Douglas, in a concurring opinion discussing the application of the right to a speedy trial to delays that occur before formal accusation, quoted the following explanation:

> "Indeed, a suspect may be at a special disadvantage when complaint or indictment, or arrest, is purposefully delayed. With no knowledge that criminal charges are to be brought against him, an innocent man has no reason to fix in his memory the happenings on the day of the alleged crime. Memory grows dim with the passage of time. Witnesses disappear. With each day, the accused becomes less able to make out his defense. If during the delay, the Government's case is already in its hands, the balance of advantage shifts more in favor of the Government the more the Government lags. Under our constitutional system such a tactic is not available to police and prosecutors."

United States v. Marion, 404 U.S. 307, 331 n.3 (1971) (Douglas, J., concurring in the result), quoting Nickens v. United States, 323 F.2d 808, 813 (1963) (Wright, J., concurring in the result).

This explanation starkly underscores the conflict the presumption of prejudice seeks to overcome. To maintain the relative positions of the parties as if no delay had occurred, there exists a presumption of prejudice to balance against a recognized but unquantifiable governmental advantage growing

with the passage of time.[9]  See Dickey v. Florida, 398 U.S. 30, 54-55 (1970) (Brennan, J., concurring) ("Because potential substantial prejudice inheres in the denial of any of these safeguards, prejudice is usually assumed when any of them is shown to have been denied").  With this goal in mind, we can easily recognize that the contours of the various concerns that affect prejudice are dynamic and fact-specific.

The Supreme Court recognized that the presumption of prejudice may not always carry the day for a defendant.  The prosecution may yet still persuasively rebut the presumption of prejudice.  See Doggett, 505 U.S. at 658 ("when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence . . . nor persuasively rebutted, the defendant is entitled to relief" [footnotes omitted]).  We defer to the motion judge's determination that the defendants did not suffer oppressive pretrial incarceration or anxiety and concern due to the delay.  Therefore, the Commonwealth persuasively must rebut the presumption that the delay has prejudiced the ability to present a meaningful defense.

---

[9] Clearly, a delay also can impair the prosecution's case. In a speedy trial analysis, a necessary precondition is that the Commonwealth feels its evidence is strong enough to bring the case forward.  In considering the existence -- whether actual or presumed -- of prejudice, therefore, we need not account for the effect of the delay on the Commonwealth's evidence.

The Commonwealth argues that it persuasively has rebutted the presumption of prejudice because much of the Commonwealth's evidence has been preserved. All of the witnesses but one are still available to testify. However, this assertion is only half of the analysis because "the passage of time is a double-edged sword." Butler, 464 Mass. at 717-718. To rebut persuasively a presumption of prejudice, the Commonwealth not only must demonstrate that its case has not been impacted by the passage of time, but also must show that the defendant's case has not suffered any prejudice. See United States v. Molina-Solorio, 577 F.3d 300, 307 & n.4 (5th Cir. 2009). This bar is difficult to meet. See Uviller, Barker v. Wingo: Speedy Trial Gets a Fast Shuffle, 72 Colum. L. Rev. 1376, 1394-1395 (1972).

The Commonwealth has failed to -- and likely cannot -- demonstrate that the defendants have suffered no prejudice. This fact, however, is not dispositive of our analysis of the fourth Barker factor. Instead, the weight of this factor also is affected by any circumstances that may extenuate the prejudice. See Doggett, 505 U.S. at 658. Timi's time in flight, nearly half of the total delay and attributable wholly to his deliberate action, is a circumstance that extenuates the prejudice caused by the entirety of the nine-year delay and accordingly lessens the weight of this factor in the final summation of the Barker test in his case. Nickoyan's much

shorter flight and longer postsentencing delay does not extenuate the prejudice as much as in Timi's case.  We therefore place greater weight on the fourth Barker factor in Nickoyan's favor and less in Timi's.

e.  Weighing the Barker factors.  No single factor nor specific combination thereof is a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  Barker, 407 U.S. at 533.  The balancing of the factors is "difficult and sensitive."  Id.  We discuss the balancing of the factors for Nickoyan and Timi in turn.

The total delay of nine years weighs against the Commonwealth in Timi's case but is heavily mitigated by the fact nearly half of the delay was caused by Timi's flight and Federal trial.  Furthermore, Timi took no action consistent with asserting his speedy trial right.  Any presumption of prejudice weighing in Timi's favor is extenuated by his flight.  In the totality of the circumstances, we are confident in saying that Timi's right to a speedy trial has not been violated, as the motion judge determined.

Nickoyan faced the same total nine-year delay as Timi, and thus that factor must weigh in his favor.  As we have stated, the reason for the delay post-Federal sentencing is due to the negligence of the Commonwealth in bringing Nickoyan to trial. That factor must also weigh in Nickoyan's favor.  Although

Nickoyan also took no action consistent with asserting his speedy trial right, this factor is offset by the presumption of prejudice for which we must account and which is neither otherwise extenuated nor persuasively rebutted. In the final weighing, the Barker factors clearly point to a violation of Nickoyan's right to a speedy trial as the motion judge also determined.

f. Rule 36 (d) (3). The defendants argue that the delay in filing the detainer by the Commonwealth should result in the dismissal of the charges under Mass. R. Crim. P. 36 (d) (3), 378 Mass. 909 (1979). The IAD does not govern when a detainer should be filed against a prisoner. Rather it deals with the proper resolution of detainers once they are filed. See St. 1965, c. 892, § 1, art. I. The duty to file detainers for defendants incarcerated outside the Commonwealth is explained in rule 36 (d) (3). The rule requires that a prosecutor diligently seek to file a detainer. Id. If the prosecutor has delayed unreasonably, the defendant must show actual prejudice from the failure to file a detainer in order for the charges to be dismissed with prejudice. See Commonwealth v. Roman, 470 Mass. 85, 95 (2014) (requiring showing of actual prejudice under rule 36 [c]); Commonwealth v. Ferreira, 26 Mass. App. Ct. 67, 69-71 (1988) (declining to dismiss absent showing of prejudice under rule 36 [d]). The defendants argue that this court should adopt

the constitutional rule of presumptive prejudice in analyzing the failure of prosecutors to timely file a detainer.  We decline to do so.  The defendants have not demonstrated any actual prejudice arising from the delay in filing the detainer.[10]  We therefore decline to dismiss the charges pursuant to rule 36.

4.  <u>Conclusion</u>.  For the aforementioned reasons, we affirm the denial of Timi's motion to dismiss and the allowance of Nickoyan's.

<u>So ordered</u>.

---

[10] Timi additionally argues that this court should consider dismissal under Mass. R. Crim. P. 36 (c), 378 Mass. 909 (1979).  Such an analysis also requires a showing of particular prejudice.  See <u>Commonwealth</u> v. <u>Roman</u>, 470 Mass. 85, 95 (2014).  We accordingly decline to dismiss the charges against Timi because of a violation of rule 36 (c).