NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1301

COMMONWEALTH

vs.

CHRISTOPHER HENRY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Christopher Henry, appeals from a conviction, after a jury waived trial in Superior Court, of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b), and from orders of two Superior Court judges denying his motions for new trial.  Concluding that, where the defendant's newly discovered evidence consists of an eyewitness who observed that the defendant was unarmed, the defendant is entitled to an evidentiary hearing on his motion for a new trial, we vacate the denial of the defendant's second motion for a new trial.

1.  Newly discovered evidence.  a.  Standard of review. "Rule 30 (b) of the Massachusetts Rules of Criminal Procedure,

as appearing in 435 Mass. 1501 (2001), authorizes a judge to 'grant a new trial at any time if it appears that justice may not have been done.'" Commonwealth v. Watkins, 486 Mass. 801, 803-804 (2021). "To prevail on a motion for a new trial based on new evidence, a defendant must establish 'both that the evidence is newly discovered [or newly available] and that it casts real doubt on the justice of the conviction.'" Commonwealth v. Bonnett, 482 Mass. 838, 844 (2019), quoting Commonwealth v. Grace, 397 Mass. 303, 305 (1986). "New evidence will cast real doubt on the justice of the conviction if there is a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." Commonwealth v. Sullivan, 469 Mass. 340, 350 (2014).

The trial judge denied the defendant's first motion for a new trial, but a different judge (motion judge) denied his second motion for a new trial which raised, inter alia, his claim of newly discovered evidence. "Where . . . the motion judge was not the trial judge, did not conduct an evidentiary hearing, and instead relied on the trial transcripts, affidavits, and other documentary evidence, we review de novo the denial of a motion for a new trial." Commonwealth v. Pope, 489 Mass. 790, 793-794 (2022). Accord Commonwealth v. Duguay, 492 Mass. 520, 531 (2023).

A motion for a new trial may be denied without an evidentiary hearing "if no substantial issue is raised by the motion or affidavits."  Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001).  "In determining whether a substantial issue exists, 'a judge considers the seriousness of the issues raised and the adequacy of the defendant's showing on those issues.'"  Commonwealth v. Upton, 484 Mass. 155, 162 (2020), quoting Commonwealth v. Barry, 481 Mass. 388, 401 (2019).  "Although a defendant's motion and affidavits 'need not prove the issue raised,' to be adequate 'they must at least contain sufficient credible information to cast doubt on the issue.'"  Commonwealth v. Lys, 481 Mass. 1, 5 (2018), quoting Commonwealth v. Denis, 442 Mass. 617, 629 (2004).

b.  Eyewitness account.  The evidence at trial was that the defendant sliced the face of another inmate with a razor blade. The eyewitness inmate, who saw the altercation, averred that he "did not see [the defendant] with anything in his hands at any point."  The motion judge found that, although the eyewitness inmate's affidavit "appears to be newly discovered . . . . it would not have been a real factor in the case," as the inmate's account of events was largely contradicted by the officer's trial testimony.  The fact that the inmate's account contradicts the officer's trial testimony, however, is the very reason that it might have been valuable to the defendant.  See Commonwealth

3

v. Smith, 90 Mass. App. Ct. 261, 269 (2016) ("Although it may very well be that [the inmate's] allegations are not credible,[] where, as here, the credibility of the affiant cannot be gleaned solely from the contents of the affidavit, it is only through the crucible of direct and cross-examination that such a judgment can be made").

More to the point, the motion judge stated that the eyewitness's proposed testimony "would not likely be material to the decision-making process because it is unclear how far away from the altercation he was." It is, indeed, difficult to tell from this record how far away the eyewitness was and whether he had a proper vantage point to make credible observations. Those difficulties, however, are precisely why an evidentiary hearing is warranted. The defendant has made an adequate showing that an eyewitness to the crime observed that he was unarmed. Whether this eyewitness's testimony would have wilted under cross-examination or provided enough heft to be a real factor in the trier of fact's decision-making is something that can be determined in an evidentiary hearing. See Commonwealth v. Drayton, 473 Mass. 23, 36 (2015), S.C., 479 Mass. 479 (2018) (evidentiary hearing required where "affidavit [if admissible] directly contradicts" sole percipient witness's testimony). We accordingly vacate the denial of the defendant's second motion

4

for a new trial and remand to the Superior Court for an evidentiary hearing.

c. Other claims of newly discovered evidence. Without intending to limit the motion judge's consideration on remand of the second motion for a new trial, we add some observations about the other claims of newly discovered evidence. We discern no error in the motion judge's finding that the unit logs were not newly discovered. Trial counsel's statement that he "did not seek the unit logs" fails to explain why the logs could not have been found with reasonable diligence. This is particularly so where trial counsel requested other documents from the same correctional facility prior to trial. See Commonwealth v. Elangwe, 85 Mass. App. Ct. 189, 194-195 (2014).

In support of his motion for new trial, the defendant proffered a search policy dated June 16, 2021, well after the 2015 assault. It accordingly has no relevance to the charges at issue. The defendant's speculation about what a contemporary search policy would have stated is just that. In any event, even if the defendant was searched upon reentering the unit, he could have armed himself in the ten minutes between reentry and the assault. Moreover, even if such a search policy did exist in 2015, it would not be considered newly discovered evidence as the defendant fails to explain why trial counsel would not have been able to discover the contemporaneous policy with reasonable

5

diligence.[1]  See Commonwealth v. Teixeira, 486 Mass. 617, 640 (2021).

2.  Ineffective assistance of counsel.  a.  Standard of review.  "Where a motion for a new trial is based on ineffective assistance of counsel, the defendant must show that (1) the 'behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer' and (2) such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence.'"  Commonwealth v. Tavares, 491 Mass. 362, 365 (2023), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  "A strategic decision amounts to ineffective assistance 'only if it was manifestly unreasonable when made.'"  Teixeira, 486 Mass. at 637, quoting Commonwealth v. Montez, 450 Mass. 736, 754 (2008).

b.  Medical expert.  The defendant has not shown that trial counsel's conduct regarding a medical expert fell below that of an ordinary fallible lawyer.  Trial counsel averred that he tasked his investigator with informally consulting a doctor about the possible causes of the victim's wounds.  This doctor

---

[1] The defendant's corresponding claims that trial counsel's failure to secure the unit logs or search policy prior to trial amounts to ineffective assistance of counsel fail as the defendant has not demonstrated that he was deprived of a "substantial ground of defense."  Commonwealth v. Kolenovic, 471 Mass. 664, 673 (2015), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

6

stated, based on the investigator's description of the case, that the victim's ear injury could have been caused by the sole of a boot.  After reviewing this information in the light of all evidence available to him, notably the photographs of the wounds, trial counsel decided not to obtain a formal opinion, believing it "entirely implausible that the injuries at issue could have been caused by the sole of a boot or a closed fist." Trial counsel evaluated the information available to him and made a reasoned decision.  This was not manifestly unreasonable. See Commonwealth v. Kolenovic, 471 Mass. 664, 674-675 (2015) ("The manifestly unreasonable test . . . is essentially a search for rationality in counsel's strategic decisions, taking into account all the circumstances known or that should have been known to counsel . . . and not whether counsel could have made alternative choices").

Moreover, the defendant has not demonstrated a viable claim of prejudice.  The doctor whose affidavit was filed in support of the defendant's motion for a new trial explicitly stated that it was "not possible to determine the origin of the injuries to [the victim]," and that he "could not determine without speculating whether the wounds depicted in the photographs here were caused by a razor or a shod foot, or had some other origin."  In short, the posttrial expert provided essentially the same equivocal view as the pretrial expert.  Moreover, even

7

if an opinion was offered, it would not have affected the trial's outcome as the judge credited the officer's testimony that he witnessed the defendant holding a razor blade. Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 326 (2023) ("We give particular deference to the decision of a motion judge who was also the trial judge").[2]

c. Constitutional right to a speedy trial. "To determine whether either prong of the Saferian test is implicated here, we consider the merits of the defendant's claim that the delay in bringing him to trial violated his constitutional right to a speedy trial." Commonwealth v. Butler, 464 Mass. 706, 709 (2013). "Because the motion judge did not preside over the trial or conduct an evidentiary hearing, . . . we review the denial of the motion for a new trial de novo." Commonwealth v. Mazza, 484 Mass. 539, 547 (2020).

"Both the Sixth Amendment [to the United States Constitution], incorporated through the Fourteenth Amendment [to the United States Constitution], and art. 11 [of the Massachusetts Declaration of Rights] guarantee criminal defendants the right to a speedy trial. We interpret art. 11 through the lens of Sixth Amendment analysis." Commonwealth v.

---

[2] The motion judge who presided over the defendant's first motion for new trial, which considered only the defendant's claim of ineffective assistance of counsel based on the failure to obtain a medical opinion, was also the trial judge.

McNair, 98 Mass. App. Ct. 750, 754 (2020), quoting Commonwealth v. Dirico, 480 Mass. 491, 505 (2018). "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Commonwealth v. Wallace, 472 Mass. 56, 60 (2015), quoting Doggett v. United States, 505 U.S. 647, 651-652 (1992). See also Barker v. Wingo, 407 U.S. 514, 530-533 (1972) (establishing four-factor balancing test). "Once a defendant has established presumptive prejudice, courts apply the four-factor Barker test to evaluate whether the defendant's constitutional right to a speedy trial has, in fact, been violated." Butler, 464 Mass. at 710. "Under the Barker test, a reviewing court weighs the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant." Dirico, supra at 506, citing Barker, supra at 530.

Here, the nearly four-year long delay between the issuance of the complaint in December 2015 and the defendant's trial in 2019 establishes both the threshold presumptive prejudice and weighs heavily against the Commonwealth under the first Barker factor. Butler, 464 Mass. at 715, quoting Doggett, 505 U.S. at 651 ("Length of delay 'is actually a double enquiry'").

Both the Commonwealth and the defendant contributed to the pretrial delay. The Commonwealth appropriately concedes that it

9

was negligent in failing to file a detainer under the Interstate Agreement on Detainers before the defendant was to be released from Federal custody in 2018. Cf. Butler, 446 Mass. at 715, quoting Commonwealth v. Willis, 21 Mass. App. Ct. 963, 964-965 (1986) ("The Commonwealth, in the performance of its public trust . . . [has] some 'duty to coordinate the efforts of its various criminal divisions'"). Although the Commonwealth's negligence is not excused, it weighs only lightly against the Commonwealth as there is no evidence of purposeful delay on its part. See Wallace, 472 Mass. at 61 ("Weighing most heavily against the government are deliberate attempts at delay").

Conversely, "[o]f equal weight but opposite import to a defendant are 'delays requested or otherwise orchestrated by the defendant, such as evading capture by authorities.'" Wallace, 472 Mass. at 61, quoting Commonwealth v. Carr, 464 Mass. 855, 861 (2012). Although we recognize that the defendant asserted his speedy trial right on multiple occasions prior to his release from Federal custody, we likewise note that the defendant did not subsequently assert this right upon his release from Federal custody prior to trial. See Butler, 464 Mass. at 716 ("we do require more than the defendant's soft assertion of his right to a speedy trial"). Indeed, after his release from Federal custody in March 2018, the defendant defaulted in August 2018. After appearing in court the

10

following month, the defendant then agreed to a continuance for the subsequent pretrial hearing scheduled in November 2018. On the day of his trial in December 2018, the defendant requested new representation. The defendant's default and other delaying actions between August and December 2018 weigh heavily against the defendant, suggesting that he was not eager for a speedy trial.

Finally, although the nearly four-year long delay established a presumption of prejudice, it did not result in prejudice particularized to the defendant. See Wallace, 472 Mass. at 60, quoting Doggett, 505 U.S. at 655-656 ("The presumption of prejudice derived from a delay cannot be the sole basis of a speedy trial claim but rather is 'part of the mix of relevant facts'"). "Prejudice to the defendant 'should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect,' which include the interests '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" Dirico, 480 Mass. at 507, quoting Butler, 464 Mass. at 717. Here, the defendant did not suffer oppressive pretrial incarceration as he was held in Federal custody until 2018 and was subsequently released on bail. Moreover, the defendant's general claim that he suffered anxiety and concern is belied by

11

the defendant's delaying tactics between August and December 2018 and his failure to assert his right thereafter.

Furthermore, the defendant's claim that the delay "caused key witnesses' memories to fade, and potentially exculpatory evidence to become stale, . . . and compromised the reliability of a trial in ways neither party can prove or identify" is unpersuasive as it is unsupported by the record. Indeed, the defendant points only to a Commonwealth's witness's memory as affected by the pretrial delay. See also Butler, 464 Mass. at 717-718 ("the passage of time is a double-edge sword"). The defendant's argument that the delay prevented his immediate communication with percipient inmate witnesses is simply contrary to the evidence. The defendant was removed from the Plymouth County House of Corrections within three months of the crime and within two months of his being charged, delays that do not raise any constitutional speedy trial concerns. See Dirico, 480 Mass. at 506 (speedy trial right comes into play as delay "approaches one year").[3] Accordingly, the defendant has failed to show he suffered particularized harm from the pretrial delay.

---

[3] For the same reason, the defendant's claim of prejudicial preindictment delay fails. The defendant's claim that "the delay was the result of an intentional and / or reckless failure of the Commonwealth" is unsupported by any evidence. See Commonwealth v. Dame, 473 Mass. 524, 530, cert. denied, 580 U.S. 857 (2016), quoting Commonwealth v. George, 430 Mass. 276, 281 (1999) ("A defendant seeking dismissal of an indictment due to

12

Considering the Barker factors as a whole, we find that the defendant's constitutional right to a speedy trial was not violated. Accordingly, the defendant was not deprived of a substantial ground of defense. See Commonwealth v. Diaz, 448 Mass. 286, 289 (2007) ("An ineffective assistance claim based on the failure to bring a motion requires the defendant to show that the motion would likely have been granted"); Commonwealth v. Mathews, 450 Mass. 858, 873 (2008) ("Ultimately, the defendant must demonstrate that trial counsel would have been successful had he filed a motion to dismiss").

3. Opening statement. Under Mass. R. Crim. P. 24 (a) (1), 378 Mass. 895 (1979), a "defendant may present an opening statement of his defense after the opening statement of the Commonwealth or after the close of the Commonwealth's evidence." A defendant, however, is not required to make an opening statement, as "waiver of an opening statement has been held to be 'trivial', a 'tactical decision', and a 'matter of professional judgment', as well as 'within the realm of trial strategy.'" Commonwealth v. Scott, 430 Mass. 351, 357 (1999), quoting Commonwealth v. Cohen, 412 Mass. 375, 391 (1992).

_____

preindictment delay 'must demonstrate that he suffered substantial, actual prejudice to his defense, and that the delay was intentionally or recklessly caused by the government'"). For this reason, the corresponding ineffective assistance of counsel claim fails.

13

Because the defendant did not object, we review for a substantial risk of a miscarriage of justice.  See Commonwealth v. McDermott, 493 Mass. 403, 416 (2024).

The prosecutor waived his opening statement and asked to "[j]ust call a witness at this point."  The prosecutor then offered an exhibit, and defense counsel said, "No objection as redacted."  The prosecutor then asked to call a witness, and again defense counsel had no objection.  There is no way to understand this chain of events as anything other than defense counsel's waiver of an opening statement as well.  Accordingly, the defendant's reliance on Commonwealth v. Dupree, 16 Mass. App. Ct. 600 (1983), is misplaced.  There, "[d]efense counsel immediately stated his intention to make an opening," and the judge "stated he would not permit the defendant to open until after the Commonwealth had rested."  Id. at 601.  Accord United States v. Hershenow, 680 F.2d 847, 857 (1st Cir. 1982) (judge denied defendants' opening statements before government's case over objections of both counsel).

4.  Rule 17 motion.  The defendant argues that the trial judge improperly denied his pretrial motion to subpoena documents.  To obtain a Mass. R. Crim. P. 17 subpoena, "the moving party must establish good cause for the production of third-party documents, which is 'satisfied by a showing "(1) that the documents are evidentiary and relevant; (2) that

14

they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"'" Commonwealth v. Hunt, 86 Mass. App. Ct. 494, 498 (2014), quoting Commonwealth v. Lampron, 441 Mass. 265, 269 (2004).[4]  We review for an abuse of discretion. See Commonwealth v. Michalski, 95 Mass. App. Ct. 520, 522 (2019).

Here, the defendant was not seeking documents that were evidentiary and relevant.  See Commonwealth v. Olivier, 89 Mass. App. Ct. 836, 845 (2016) ("The standard of relevance applied to rule 17[a][2] motions is the same standard applied to evidence at trial").  Instead, he was seeking to "identify[] potential witnesses" that he could then interview.  "[R]ule 17(a)(2) is not a discovery tool, and . . . the limited purpose of rule

_____

[4] We recognize that there is a colorable claim that the prison personnel were part of the prosecution team under the facts of this case.  See Commonwealth v. Beal, 429 Mass. 530, 531 (1999) (prosecution team involves "those individuals acting, in some capacity, as agents of the government in the investigation and prosecution of the case").  Because the defendant did not move for these records under Mass. R. Crim. 14 (a) (2), as appearing in 442 Mass. 1518 (2004), and makes no argument on appeal regarding that rule, we do not reach it.

17 (a) (2) is to authorize a court 'to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials'" (citation omitted).  Commonwealth v. Dwyer, 448 Mass. 122, 142 (2006).  Accord Commonwealth v. Jones, 478 Mass. 65, 68-69 (2017).  See also Olivier, supra, quoting Dwyer, supra ("This standard -- rather than the broad discovery standing -- applies because 'rule 17[a][2] is not a discovery tool'").  Accordingly, the trial judge acted within his discretion in denying the motion.[5]

5. Conclusion.  The judgment is affirmed.  The order dated November 17, 2020, denying the defendant's first motion for a new trial is affirmed.  The order dated August 11, 2023, denying the defendant's second motion for a new trial is vacated, and

---

[5] In light of our rejection of all of the defendant's claims of errors except for the first, his claim of cumulative error is without merit.  See Commonwealth v. Robinson, 493 Mass. 775, 795 (2024).

16

the case is remanded for further proceedings consistent with this decision.

          <u>So ordered</u>.

          By the Court (Ditkoff,
           Grant & Toone, JJ.[6]),

          Clerk

Entered:  September 12, 2025.

---

[6] The panelists are listed in order of seniority.